Michael E. THORNE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19333.

United States Court of Appeals Eighth Circuit.

Feb. 11, 1969.

Michael E. Thorne, pro se.

Calvin K. Hamilton, U. S. Atty., and Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

Michael E. Thorne, by this proceeding under 28 U.S.C. § 2255 and Rule 35, Fed. R.Crim.P., seeks to correct a sentence he claims to be excessive and illegal. We recite the chronology:

1. On September 30, 1964, a three-count indictment was returned against Thorne in the Western District of Missouri. Count I charged him with a violation of 18 U.S.C. § 111, namely, assaulting, on September 29, wilfully and by use of a dangerous weapon, FBI officer James F. Cassidy, Jr., while Cassidy was knowingly engaged in the performance of official duties. Count II was an identical charge with respect to FBI officer Jimmy R. Calhoon. Count III charged a violation on the same day of 15 U.S.C. § 902(f) (the knowing receipt, while a fugitive from justice, of a firearm shipped in interstate or foreign commerce).[1] The weapon, an automatic pistol, described in each of the three counts, is one and the same gun.

2. On October 2, 1964, Thorne appeared with his retained counsel, Carrol C. Kennett, before Judge Duncan for arraignment. He entered a plea of guilty to each of the three counts of the indictment. A presentence report was requested.

3. On October 22, 1964, Thorne again appeared with his attorney before Judge Duncan. Sentences of 10 years on Count I, of 5 years on Count II, and of 1 year on Count III were imposed. The last was "to run concurrently with Counts I and II."

4. The formal judgment and commitment signed by Judge Duncan and filed on October 22, 1964, reads in part:

"IT IS ADJUDGED that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of ten (10) years on Count 1, and a period of five (5) years on Count 2, said sentence to be served consecutively to the sentence of imprisonment imposed on Count 1; and, a period of one (1) year on Count 3, to be served concurrently with the sentences of imprisonment imposed on Counts 1 and 2, for a total sentence of imprisonment of fifteen (15) years."

5. The transcript of the proceedings of October 2 and October 22 was filed December 29, 1964. That transcript recited that the sentence of 5 years on Count II was "to run concurrently with Count I. * * * making a total of ten years."

6. In October 1967 Emily F. Miles, the official reporter who had served at the hearing of October 22, 1964, filed with the district court her "Motion to authorize correction of transcript". In that motion she asserted that at the time of the 1964 hearing she was "extremely busy" and "sometimes neglectful in checking the transcripts against the shorthand notes when given to me by the transcriber, merely glancing through them for typographical errors"; that a deputy clerk of court had recently called to her attention that there was a variance between the transcript and the judge's notes and the clerk's notes "with reference to the sentence imposed"; that the unchecked transcript had been secured

---

1. Section 902 has since been repealed by Pub.L. 90–351, Title IV, § 906, 82 Stat. 234, effective 180 days after June 19, 1968, and has been replaced by portions of § 902 of Pub.L. 90–351, now 18 U.S.C. § 922.

by Thorne's wife and forwarded to him; that upon checking her shorthand notes against the transcript she realized "that I had inked my Stenograph that morning and used too much ink and as a result, much blurring was apparent"; that the word "concurrently" had been typed in place of "consecutively" and "ten years" in place of "fifteen years". Judge Duncan thereupon issued an order reciting "upon hearing * * * and upon an examination of said transcript" and ordering the correction of the transcript accordingly.

7. This change came promptly to the attention of Thorne in the United States Penitentiary at Leavenworth, Kansas. On October 23, 1967, he filed with the district court his motion for correction of sentence to make it conform with the transcript as originally typed. In his motion Thorne urges that, in resisting arrest, his action constituted but one criminal act; that, as a consequence, the 10 and 5 year sentences under Count I and Count II exceed the 10 year maximum prescribed by 18 U.S.C. § 111; that there is an inconsistency between the transcript prior to the correction and the formal judgment and commitment; that, where a discrepancy of this kind is present, "the accused shall benefit by that which leads to liberty"; and that his present commitment should be reduced from 15 to 10 years.

8. The United States Attorney filed a response urging an evidentiary hearing "to give petitioner every opportunity to establish his factual claims." Judge Duncan at this point disqualified himself and Judge Collinson received the case. He appointed counsel for Thorne. Counsel so appointed concurred with the suggestion that a full evidentiary hearing be granted.

9. On January 11 and April 19, 1968, hearings were held on Thorne's motion. This was in accord with Ladner v. United States, 358 U.S. 169, 178–179, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). At the January hearing Thorne, Miss Miles, a deputy clerk, Judge Duncan and Mr. Kennett all testified. At the conclusion of

the hearing Judge Collinson stated from the bench, "I am going to find * * * on the consecutive-concurrent issue, I am going to find right now from the bench against the petitioner on that issue. I think the overwhelming evidence * * * leave[s] no room for doubt. * * * *" At the April hearing agents Calhoon and Cassidy testified. The court at that time reserved ruling on the single-multiple offense issue.

10. On April 30, 1968, Judge Collinson filed his order containing findings and conclusions and denying Thorne's motion.

Thorne appeals.

A. *The consecutive or concurrent sentence issue.* This issue inevitably arises because of the discrepancy between the transcript, as initially typed, and the formal judgment and commitment filed earlier.

Thorne's position is that the transcript is the official record and that it "cannot be changed three years later where the appellant had nothing to do with causing the error." He testified "I was sort of upset and I don't know what Judge Duncan said. I am not contending one way or another that I know for an actual fact what he said."

This is not a case where the court's own formal record and the judge's oral pronouncement of sentence are not consistent and where one is then confronted with the troublesome issue as to which is to prevail. See Spriggs v. United States, 225 F.2d 865, 868 (9 Cir. 1955), cert. denied 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830; Baker v. Ellis, 204 F.2d 353, 355 (5 Cir. 1953); Meredith v. Gough, 168 F.2d 193 (5 Cir. 1948), cert. denied 335 U.S. 873, 69 S.Ct. 161, 93 L.Ed. 417. That issue is absent here and need not be decided. Pollard v. United States, 352 U.S. 354, 360, 77 S.Ct. 481, 1 L.Ed.2d 393, (1957); United States v. Drake, 274 F.2d 611, 613 (7 Cir. 1960), cert. denied 362 U.S. 981, 80 S.Ct. 1068, 4 L.Ed.2d 1016.

■ Judge Collinson was confronted with a mere question of fact, namely, what sentences did Judge Duncan actually

impose on Michael E. Thorne on October 22, 1964. As to this factual issue the evidence is overwhelmingly one way. Only the transcript, as initially typed by the helper-transcriber, lends support to the concurrency argument. Arrayed in opposition are: (1) the formal judgment and commitment hereinabove quoted; (2) the testimony of reporter Miles that the original transcription was made not by herself but by a transcriber, that she discovered the error only in October 1967, and that her notes, in contrast to the typing, do clearly read "consecutive" and "a total of fifteen years"; [2] (3) the longhand minute entries of the deputy clerk of court on duty at the sentencing; (4) Judge Duncan's handwritten bench notes made at the time of sentencing; (5) Judge Duncan's personal recollection; (6) the personal and independent recollection of defense counsel Kennett; (7) Thorne's inability, by his testimony, to state without equivocation that Judge Duncan had imposed concurrent sentences; and (8) Thorne's concession that on November 23, 1964, after the sentencing and long prior to the correction of October 1967, he had written Judge Duncan asking him to reduce his 15 year sentence, thus demonstrating that Thorne knew at that time that consecutiveness and not concurrency was being applied.

Thus the record most adequately supports Judge Collinson's finding that the sentences orally pronounced by Judge Duncan from the bench on the first two counts were consecutive and not concurrent and were in full conformity with the formal judgment and commitment.

■ B. *The single or multiple offense issue.* The assault or assaults took place as agents Cassidy and Calhoon met with Thorne to determine whether he was a certain fugitive in whom they were interested. Of course, in a sense, what took place was all part of one affray.

However, Ladner v. United States, *supra,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), dictates the proper approach to 18 U.S.C. § 111. At issue there was the single or multiple offense character of the wounding of two officers. The petitioner claimed that this came about as the result of a single discharge from a shotgun. The Supreme Court held that a single discharge would constitute only one violation of the statute. It reached this conclusion because it felt that the statutory language and the legislative history did not clearly indicate that Congress intended a single act of assault of this type, affecting two officers, to constitute two offenses, and that a policy of lenity was to be applied and required the adoption of the less harsh of two possible meanings. The procedural result was that the petitioner was entitled to the opportunity, by an evidentiary hearing, to sustain his allegation as to a single discharge of the shotgun. In footnote 6, 358 U.S. at 178, 79 S.Ct. at 214, the Court said:

> "In view of the trial judge's recollection that 'more than one shot was fired into the car in which the officers were riding * * *' we cannot say that it is impossible that petitioner was properly convicted of more than one offense, even under the principles which govern here."

and thus clearly indicated that the facts control and that more than one offense may be committed in an altercation.

In view of the allegations in Thorne's motion, Judge Collinson, despite the pleas of guilty, appropriately ordered the evidentiary hearing. He found and concluded that, upon the evidence, separate assaults, within the meaning of § 111, had been committed by Thorne upon officers Cassidy and Calhoon.

Thorne testified that on the day in question he was employed at a Kansas

2. We have examined the photograph, attached to Miss Miles' motion, of the pertinent part of her notes of the 1964 sentencing. They are, as she testified, somewhat "smeared" from fresh ink. Nevertheless, at the hearing she had no difficulty reading them on her direct examination and, on cross examination, in pointing out to counsel the character differences between consecutive and concurrent and 10 and 15.

City hospital; that agents Cassidy and Calhoon were escorted to his office; that they asked Thorne whether he knew the person depicted in a photograph they presented to him; that Cassidy asked if Thorne had a tattoo on his left arm; that he, Thorne, then pulled out a small .25-caliber pistol; that Cassidy grabbed his hand and the two men fell to the floor; that Calhoon "did the same thing"; that each agent had a hand on his wrist; that the weapon fired but he did not know how many times; that the first he knew Cassidy was shot was when Cassidy said so; that Thorne then noticed that he, too, had been shot; that he did not make a threatening move or gesture toward Calhoon separately; that he did not point the gun at either agent; that he did not discharge the gun; and that it fired when Cassidy grabbed him. On cross examination Thorne stated that more than one shot was fired; that the gun was lost in the scuffle; that he did not regain possession of it; that it was his intention to try to escape; that the one agent was shot and seriously wounded; and that he did not contend that he was not guilty of an assault on at least one officer.

Agent Calhoon testified that, when Thorne drew his gun, he stepped back slightly from the two agents, "pointing the gun at both of us, waving back and forth"; that Cassidy with his briefcase "hit the gun"; that Calhoon charged Thorne and drove him to the wall; that Cassidy grabbed Thorne's right wrist; that Thorne forced his arm down and the gun fired striking Cassidy in the arm; that the three went down to the floor; that Thorne continued to shoot and did so four more times; that Calhoon tried to trap the slide of the automatic but Thorne succeeded in peeling Calhoon's fingers back away from the slide; that Calhoon wrenched his hand free and pulled his gun; that at that point Cassidy collapsed and fell back; that Thorne then brought his gun to bear on Calhoon "[r]ight under my neck" and 4 to 6 inches away; that Calhoon shot and Thorne "doubled up into a ball"; and that Calhoon picked up Thorne's gun and handcuffed Thorne. On cross examination Calhoon stated that all this took place in a very short time, that is, 2 or 3 minutes and maybe less; that the bullet which entered Cassidy's arm pierced his lung; that Cassidy was shot at the time he had hold of Thorne's right arm; and that Thorne deliberately turned the gun down and shot Cassidy.

Agent Cassidy testified that as he reached over to lift up Thorne's short-sleeved hospital smock in order to look at his left bicep to determine if a tattoo was there Thorne drew his automatic; that he pointed the gun at Cassidy and at Calhoon; that the agents jumped him and struggled against the wall with him but the next thing he recalled was a sharp pain around his spine; that he heard Calhoon shoot and then "kind of relaxed"; that at this point he was confused as to what happened; and that he was wounded through the left bicep and the bullet penetrated his lung and spine.

The assault upon Cassidy is clearly established and, indeed, is conceded by Thorne. And the separate character of the assault upon Calhoon, particularly after Cassidy was shot and seriously wounded, is adequately proved by Calhoon's testimony which the trial court accepted. Thorne continued the struggle against Calhoon and fired his gun until it jammed and he himself was shot. The evidence thus is adequately sustaining and the imposition of consecutive sentences upon Counts I and II is fully warranted. Cameron v. United States, 320 F.2d 16 (5 Cir. 1963); United States v. Montanaro, 362 F.2d 527 (2 Cir. 1966), cert. denied 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144.

Thorne has failed to demonstrate that he is entitled to relief.

Affirmed.