## UNITED STATES of America, Plaintiff–Appellant,

v.

## Arthur Theodore TOWNE; Dane Joseph Treiber, Defendants–Appellees.

### No. 91–10562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1992.

Decided June 18, 1993.

---

Miguel Rodriguez, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellant.

Dale A. Drozd, Blackmon & Drozd, Sacramento, CA, for defendants-appellees.

Before: CHOY, NOONAN, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We confront the metaphysical question, what is a search warrant? In more prosaic terms, we must decide whether a search warrant may be comprised of pieces of paper that are not physically attached to each other.

I

On May 27, 1990, Sutter County Municipal State Court Judge Robert Damron issued a search warrant for the residence of Dane Treiber ("Treiber"). The warrant was executed by California state law enforcement personnel, who discovered evidence of drug manufacturing and trafficking on the premises, including a working methamphetamine laboratory and marijuana grow room. A federal grand jury indicted Treiber and Arthur Towne ("Towne") on charges related to the manufacture, possession, and distribution of methamphetamine. The grand jury also indicted Treiber for manufacturing marijuana.

Treiber and Towne moved to suppress the fruits of the search of Treiber's residence on the ground that the search warrant was insufficiently particular because it contained no description of what the executing officers were to search for and seize. In the space reserved for such a description on the search warrant application, Officer John Buckland had typed: "See Attachment B." However, when the state municipal court file was certified to the federal district court, the search warrant contained therein had no such attachment.

In opposing the suppression motion, the government pointed out that the municipal court file did contain Officer Buckland's affidavit in support of the warrant application, and that this affidavit did have an Attachment B. The government submitted the declaration of Officer Buckland, who attested that Attachment B to the affidavit "was identical to, and the same as, Attachment B to the search warrant." Officer Buckland's declaration further stated that a copy of Attachment B had "accompanied" the search warrant at the time it was presented for authorization. To confirm this, the government submitted the declaration of Judge Damron, who stated that the search warrant presented to him by Officer Buckland "included an Attachment B to the search warrant." Judge Damron further attested that in issuing the warrant he "did not vary" from his general practice of "insur[ing] that all attachments are present and are reviewed at the time" of issuance. Neither declaration, however, stated that Attachment B was physically affixed to the search warrant presented to Judge Damron.

The district court refused to consider the proffered declarations, and granted appellees' motion. The court stated that "for the purpose of hearings on motions to suppress held in this court, the contents of the [state] municipal court file define the contents of the warrant at the time it was signed by the magistrate and extrinsic evidence is inadmissible in this court for the purpose of impeaching the municipal court's file." The court then held that, since the search warrant contained in the municipal court's file described the items to be searched for and seized by reference to a nonexistent Attachment B, it was necessarily overbroad. By the same token, the warrant's facial overbreadth was deemed "so pronounced as to preclude reasonable reliance" by the executing officers, thus removing it from the ambit of the good faith exception to the exclusionary rule.

A motion was then brought in the California municipal court asking that its record be revised or corrected to reflect that Attachment B was part of the search warrant as issued. The motion was heard by Judge Damron, who refused to alter the state court

record. The district court subsequently denied the government's motion to reconsider its suppression ruling. The government now appeals.

## II

We turn first to the question whether the district court should have considered the affidavits submitted by the government in support of its contention that Attachment B was part of the search warrant.

### A

■ The court's conclusion that the affidavits could not be considered rested primarily on the proposition that "the contents of an official court record cannot be impeached in the absence of fraud." The court reasoned that, since Attachment B was not included with the copy of the search warrant contained in the municipal court file, to allow the government to attempt to prove that the attachment was included with the copy of the search warrant presented to Judge Damron would countenance "impeachment" of the state court record. This reasoning is unsound.

Simply put, the cases cited for the "no impeachment" rule relied upon by the district court, *Baker v. Ellis*, 204 F.2d 353 (5th Cir. 1953), and *Wagner v. Hunter*, 161 F.2d 601 (10th Cir.), *cert. denied*, 332 U.S. 776, 68 S.Ct. 39, 92 L.Ed. 361 (1947), have no application under the facts at hand. The rule for which these cases stand[1] comes into play only when an attempt is made in a collateral proceeding to contradict the truth of something that is *affirmatively shown* by an official court record. *See Riddle v. Dyche*, 262 U.S. 333, 336, 43 S.Ct. 555, 556, 67 L.Ed. 1009 (1923) ("The power to inquire into facts outside the record, allowed under some circumstances, cannot be extended to such as are inconsistent with the record."); *see also*

*Brainerd v. Beal*, 498 F.2d 901, 902 (7th Cir.), *cert. denied*, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 664 (1974); *Chick v. Wingo*, 387 F.2d 330, 330–31 (6th Cir.1967).

Here, the municipal court file does not "affirmatively show" that the issuing judge was not presented with an Attachment B to the search warrant, or that the executing officers did not rely on Attachment B in conducting the search. The file, containing as it does a search warrant without an attachment, at best permits an inference that no attachment was present at the relevant times. Extrinsic evidence tending to invalidate that inference would not contradict the state court record itself.

Appellees have alleged that they were the victims of an unreasonable search. Whether this allegation has merit turns on the underlying facts, not whether the state court record fails to reflect those facts. The "assertion of a violation of rights guaranteed ... by the Constitution of the United States occasions an inquiry into the factual question" relevant to that assertion of rights, "and we are only incidentally concerned with the subordinate question of whether or not the primary fact [*viz.*, what the search warrant authorized] was properly recorded in the records of the [issuing] court. The records of that court should receive our great respect and proper deference, but being silent on the subject of our concern, they do not necessarily foreclose our further inquiry." *Bradley v. Smith*, 255 F.2d 45, 47 (4th Cir.1958). The district court therefore erred in refusing the government's affidavits on the basis of the "no impeachment" rule.

### B

■ The district court gave two other reasons for refusing to consider the affidavits proffered by the government. First, the court cited "federalism concerns," noting that to accept Judge Damron's affidavit might

---

1. We note that the cases might be said to stand for two different rules. *Wagner*, for example, says that the affirmative recitals contained in a court's records "import absolute verity" in a collateral proceeding. 161 F.2d at 602. *Baker* says that such recitals are "presumptively valid." 204 F.2d at 355. We need not decide which of these approaches represents the better rule.

Such a decision must await a case in which the question is presented on the facts. *But see United States v. Carroll*, 932 F.2d 823, 825 (9th Cir. 1991) ("In the absence of other evidence, the court records which assert that the defendant did waive his rights must be presumed to be correct.").

necessitate his testifying at an evidentiary hearing, and suggesting that there could be "no greater affront to the relationship between state and federal courts than to permit a party to haul a judge of the state court before this court for the purpose of testing his credibility."[2]

No authority has been cited either by the court or by the appellees to support the idea that this is, under the circumstances, a valid concern. The government, meanwhile, cites a few of the many cases in which affidavits and live testimony have been elicited from state judges in federal proceedings. *See United States v. Piver*, 899 F.2d 881, 883 (9th Cir.1990); *see also Weidner v. Thieret*, 932 F.2d 626, 632–33 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 883, 116 L.Ed.2d 786 (1992); *United States v. Massey*, 687 F.2d 1348, 1356 (10th Cir.1982); *Thorne v. United States*, 406 F.2d 995, 997 (8th Cir.1969). Presumably, the risk of an "affront" to the state-federal relationship was at least as strong in those cases as here. At bottom, we do not believe that the possibility that a state judicial officer will be called upon to confirm and perhaps to explain at an evidentiary hearing matters to which he has already sworn on penalty of perjury should prevent his affidavit from being considered by a federal court.

■ The second supporting reason advanced by the district court for refusing the affidavits rested on the full faith and credit statute, 28 U.S.C. § 1738, which requires that state court records be given "the same full faith and credit in every court of the United States ... as they have by law or usage in the courts of the State ... from which they are taken." The court deemed it "appropriate" in light of this provision to "refuse to entertain a suggestion that a state court's records are inaccurate."

■ The fundamental problem with this reasoning is that the full faith and credit statute does not authorize a federal court to determine what constitutes an "appropriate" attitude toward a state court's file. Rather, the statute mandates that an official record be accorded the same treatment in federal court that it would be given in the courts of the state from which it comes. If the statute was implicated at all on these facts, the question the district court was bound to ask is what sort of "credit" this record would have been given in California state court if the constitutionality of the search warrant were being litigated there.

We have found no California case in which the absence of a document from an official court record has been held to constitute conclusive proof that the document did not exist. *Tate v. Superior Court*, 45 Cal.App.3d 925, 119 Cal.Rptr. 835 (1975), cited by the district court, is not to the contrary. In *Tate*, the court relied upon the record to establish certain relevant procedural facts, but neither party asserted that the record was incomplete or erroneous.

More to the point is another case cited by the district court, *People v. Curry*, 165 Cal. App.3d 349, 211 Cal.Rptr. 590 (1985). *Curry* involved a motion to quash a search warrant, the sole ground alleged being that the third page of the statement of probable cause on which the warrant was based was absent from the issuing court's file. The California Court of Appeal, relying on "the recollection and findings" of the issuing magistrate with respect to the circumstances under which the warrant was issued, ruled that the warrant should not be quashed: "The rule ... is that reversal is indicated only where critical evidence ... is irretrievably lost or destroyed, and there is *no alternative way to provide an adequate record* so that the appellate court may pass upon the question sought to be raised." *Id.*, 211 Cal.Rptr. at 593 (quotation and citation omitted, emphasis supplied). *Accord People v. Fortune*, 197 Cal.App.3d 941, 243 Cal.Rptr. 189, 195–96 (1988) (reversing trial court's decision to suppress evidence seized pursuant to a telephonic warrant where recording device malfunctioned and record thus contained only the officer's "reconstruction" of facts he recited over the phone to issuing judge; officer's testimony

2. This concern, of course, does not bear on the court's refusal to consider Officer Buckland's declaration.

and issuing judge's findings in ruling on motion to quash were adequate to ensure reliability of reconstruction, thus permitting appellate review of existence of probable cause).

It is not clear that the full faith and credit statute applies to a *void* in the state court's record. *See Bradley*, 255 F.2d at 47 (holding that Virginia's rule according to which "[t]he record imports such absolute verity that no evidence will be received to add to it or subtract from it" was "not necessarily binding" on federal habeas where the record was silent on the federal constitutional issue with which the court was concerned). In any event, under the circumstances we are satisfied that the full faith and credit statute did not compel and does not support the district court's rejection of the declarations proffered by the government.

### C

■ The district court's belief that the state of the municipal court record was dispositive of the contents of the search warrant prompted the government to have a motion brought in the state municipal court, asking that court to "correct" its record by affixing an Attachment B to the search warrant contained therein. A hearing was held, at the conclusion of which Judge Damron denied the motion. According to the appellees, "the entire issue of whether the district court could or should have considered the two declarations submitted by the government was rendered moot" by this state court proceeding, allegedly because "[t]he court that issued the warrant . . . made the factual finding that there was no Attachment B to this search

warrant providing a description of what was to be seized."

This is an erroneous characterization of the court's ruling. Judge Damron found only that there was no Attachment B to the search warrant at the time it was presented for filing, and that the absence of the attachment from the search warrant deposited in the record was not the fault of municipal court personnel. He therefore denied the motion to correct, declining "to create a document that was never filed with this court." While we respect this factual finding, it has no bearing on our decision here. That Attachment B was not filed with the municipal court when the search warrant was returned is irrelevant to the question whether the search comported with the requirements of the federal Constitution—the only question with which we are here concerned.[3]

### D

Apart from the notion that a court's records are wholly unimpeachable, there is no reason to think that extrinsic evidence cannot be considered to establish the circumstances under which a warrant was issued and the nature of the documents relied upon in authorizing a search, insofar as such matters are deemed relevant to the constitutional inquiry. The appellees cite no authority, other than that which has already been discounted, that would support the district court's conclusion that the proffered affidavits could not be considered. The government, meanwhile, cites two relevant cases which in our view dispel any doubt as to the propriety of considering extrinsic evidence in these circumstances.

3. We emphasize that the only question presented by this case is whether the search warrant met the requirements of the federal Constitution. The requirements of Fed.R.Crim.P. 41 do not apply to the warrant here at issue. *See United States v. Piver*, 899 F.2d 881, 882 (9th Cir.1990) ("searches conducted by state officers with state warrants issued by state judges, with minimal or no federal involvement, are not to be judged by the specific provisions of Rule 41 but must only conform to federal constitutional standards"). Whether the warrant satisfied the provisions of California Penal Code §§ 1523–42, which govern the issuance and execution of state search warrants, is likewise immaterial. For what it is

worth, California courts uniformly recognize that statutory provisions covering the filing and return of a search warrant are ministerial in nature, the violation of which does not in itself invalidate an otherwise lawful search or require suppression of evidence seized thereby, at least in the absence of demonstrated prejudice to the defendant. *See, e.g., People v. Meza*, 162 Cal. App.3d 25, 208 Cal.Rptr. 576, 580–81 (1984); *People v. D.M.G.*, 120 Cal.App.3d 218, 174 Cal. Rptr. 557, 565 (1981); *People v. Kirk*, 99 Cal. App.3d 89, 160 Cal.Rptr. 184, 185–88 (1979); *People v. Couch*, 97 Cal.App.3d 377, 158 Cal. Rptr. 647, 648–49 (1979).

In the first of these, *United States v. Piver,* 899 F.2d 881 (9th Cir.1990), appellant argued that the government had failed to preserve an accurate and complete account of the conversation between police officer and county judge that led to the issuance of a telephonic warrant. The conversation had been tape recorded, but the recording apparently lost. The federal district court file contained only a transcript of the recording. The district court considered the testimony of the officer who secured the warrant and the affidavit of the state judge who authorized it in finding that the transcription was "accurate" and "contemporaneous," and that there was therefore no constitutional violation. *Id.* at 883. This court considered the same evidence, and held that the district court's finding was not clearly erroneous. *Id.*

Appellees' effort to distinguish *Piver* is unpersuasive. They argue that the case is inapposite because the constitutional challenge there went not to the particularity of the warrant, but to whether a sufficient record had been preserved to permit scrutiny of the probable cause determination. This is a distinction without a difference in the present context. In *Piver,* the trial court was required to resolve a Fourth Amendment challenge that turned on whether the issuing court's record with respect to a search warrant was accurate and complete. In affirming its conclusions, this court at least implicitly approved the use of extrinsic evidence to establish the circumstances under which the warrant was issued, and to judge whether the record of the issuing court fairly represented the underlying facts. The government seeks no more in this instance.

The second case cited by the government, *United States v. Lambert,* 887 F.2d 1568 (11th Cir.1989), is all but directly on point. Although it constitutes only persuasive authority in this circuit, the analysis presented in that case is difficult to fault:

Defense counsel moved to suppress the evidence seized during the search of the Lamberts' residence on the basis of the undisputed fact that the court records did not contain an affidavit supporting the application for that search warrant. All agree that this warrant would be invalid under the Fourth Amendment and Fed. R.Crim.P. 41 unless it was supported by an affidavit establishing probable cause. The position of the prosecutor is that, whatever may have happened to it later, a legally sufficient affidavit had been submitted to the Magistrate at the time the warrant was sought and approved.

We first hold that the failure to file and preserve a supporting affidavit in the clerk's office pursuant to Fed.R.Crim.P. 41 does not invalidate an otherwise proper search warrant. Of course, the absence from the court records of an affidavit constitutes some evidence that one did not exist and, depending on the circumstances, may preclude a determination that the warrant was issued on probable cause. *However, other evidence may be presented to establish the fact that an affidavit was presented, as well as its contents.*

In the present case the Magistrate conducted a lengthy evidentiary hearing on the defendants' motions to suppress. [The district court found] that at the time of obtaining the warrant [the officer] had executed under oath before the Magistrate both the application and a supporting affidavit.... The contents of the affidavit were easily established because duplicates of the affidavit had been made and executed, one of which had been filed to support a Complaint.

Although the evidence before the trial court was not without conflict, these findings were not clearly erroneous.

*Id.* at 1571–72 (emphasis supplied).

The appellees' efforts to avoid the force of this sensible approach to the problem of a missing document do not succeed. "First," they maintain, "*Lambert* once again deals with the probable cause showing in a search warrant affidavit and not with the contents of the warrant itself. Second, it was a situation in which a federal district court was examining its own records as opposed to those of a state court." It is not clear to us how the first factor marks a relevant distinction here. *Lambert* shares with the instant case the feature that something important was allegedly missing from a court file. The question

common to both cases is whether extrinsic evidence could be considered to counter the implication that the missing something had never existed. *Lambert* says yes. That the absent document was there the affidavit and is here an attachment to the search warrant is quite beside the point. The second ground of distinction offered merely reinvokes the federalism and full faith and credit concerns relied upon by the district court in refusing to question the state court's record. As explained above, these concerns are overstated if not illusory.

We thus conclude that the district court erred in refusing to consider extrinsic evidence relevant to the circumstances under which Judge Damron issued and Officer Buckland executed the search warrant for Treiber's residence.

### III

The ultimate issue here is whether the warrant authorizing the search of Treiber's residence satisfied the requirements of the Fourth Amendment. The amendment requires that a warrant be specific. "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated December 10, 1987,* 926 F.2d 847, 856–57 (9th Cir.1991) (citations and parentheticals omitted).

Only after the content of "the search warrant" is established, however, can the warrant be tested to see if it meets these requirements. The real question presented by this case, then, is whether Attachment B is part of the search warrant, such that its description of the objects of the search may be consulted in deciding whether the warrant was sufficiently particular. Stated differently, the question here is, what serves to transmute a collection of individual pieces of paper into a "search warrant" for purposes of constitutional analysis?

### A

Appellees insist that the law of this circuit is settled on this point. Our cases, they maintain, unequivocally establish that "[i]f it is not physically attached and expressly incorporated by reference therein, a separate document cannot cure the overbreadth or lack of particularity of a search warrant." They argue that, "because Attachment B was not physically affixed to the warrant it could not, as a matter of law, be used to provide the constitutionally required particularity lacking on the face of the warrant." [4] Our review of the pertinent authorities, however, persuades us that appellees have misread our precedents—we have never held that any document that is not physically affixed to the piece of paper labeled "search warrant" is excluded from consideration in deciding whether the warrant is constitutionally specific.

■ Appellees' argument is based on a line of cases from which has emerged the "well-settled principle that a warrant's overbreadth can be cured by an accompanying affidavit that more particularly describes the items to be seized." *United States v. Luk,* 859 F.2d 667, 676 (9th Cir.1988). For convenience sake, we will refer to this principle as "cure by affidavit," although, as is evident from the discussion that follows, the same principle applies where it is some other document that allegedly supplies the requisite particularity.

The principle of cure by affidavit is clear enough. The conditions that must be satisfied in order to invoke this principle to validate a search, however, are decidedly murky. We have generally said that there are two such conditions. One of them, as all our cases agree, is that the warrant must expressly incorporate the affidavit by reference. The other condition has been variously stated as requiring either that the incorporated affidavit *accompany* or that it be *attached to* the warrant.

Some of our cases appear to ignore the second requirement entirely, suggesting that

---

**4.** The district court accepted this argument, and offered the fact that Attachment B was not physi-

cally attached to the search warrant as an alternative basis for its suppression order.

incorporation by reference alone could be sufficient to make an affidavit part of the warrant. *See United States v. Brock,* 667 F.2d 1311, 1323 (9th Cir.1982) ("When a warrant incorporates an affidavit and the affidavit specifically lists the items expected to be found, the warrant and affidavit together satisfy the specificity requirement."), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983); *United States v. Marques,* 600 F.2d 742, 752 (9th Cir.1979) (affidavit, through incorporation by reference into warrant, "thus became part of it"), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980). In both *Brock* and *Marques,* however, we held that the warrants themselves, given a common-sense interpretation, provided a sufficient description of the items seized, so that recourse to the incorporated affidavit was not required. The observations quoted above were thus unnecessary to the decisions in these cases, and cannot be deemed precedential.

Our first detailed examination of the cure-by-affidavit rule came in *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317 (9th Cir.1981). There we stated that· "the warrant may properly be construed with reference to the affidavit ... provided that a) the affidavit *accompanies* the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein." *Id.* at 1319 (emphasis supplied) (quoting *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir.1976) (per curiam)). We explained that "[w]hen the affidavit is incorporated by reference into the warrant and limits the generality of the description in the warrant, the discretion of the officers executing the warrant is limited. When the affidavit accompanies the warrant, the person being searched has notice of the specific items the officer is entitled to seize." *Id.* We held that these requirements were satisfied, observing that "[t]he warrants ... commanded the executing officers 'to seize only the above specified property as described in the Affidavits,' " and that "the affidavits were physically attached to the warrants," and thus necessarily "accompanied" them. *Id.*

On the heels of this decision there followed *United States v. Hillyard,* 677 F.2d 1336 (9th Cir.1982), where we stated that "[t]he search warrant may be construed with reference to the affidavit for purposes of satisfying the particularity requirement if (1) the affidavit *accompanies* the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein." *Id.* at 1340 (emphasis supplied). The search warrant at issue " 'commanded' the executing officers 'to search all motor vehicles and heavy equipment found on the premises to determine if said vehicles are stolen and to seize those vehicles which possess altered or defaced identification numbers or which are otherwise determined to be stolen.' " *Id.* at 1339. The affidavit included a detailed set of "procedures to differentiate stolen vehicles from those legally owned." *Id.* at 1341. We held that "the requirement of particularity was preserved," *id.,* because "the officers availed themselves of guidelines set forth in the affidavit and incorporated in the warrant" in conducting the search. *Id.* at 1340. We did not say precisely how the officers "availed themselves" of the contents of the affidavit. There is, however, nothing whatsoever in the decision to suggest that the affidavit was physically attached to the warrant at any time. Apparently, the affidavit was simply brought to the location to be searched and consulted by the executing officers as needed to enable them to carry out their inspection.

Next in line was *United States v. Hayes,* 794 F.2d 1348 (9th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987), where we again said that "[a]n affidavit may be relied upon to provide the requisite particularity in an otherwise overbroad warrant only 'if (1) the affidavit *accompanies* the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein.' " *Id.* at 1354 (quoting *Hillyard* ). We observed that "it is disputed whether the warrants adequately incorporated the affidavits by reference, but it is clear that the affidavits did not accompany the warrants." *Id.* We then continued as follows:

> The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion and to inform the persons subject to the search what items the

officers executing the warrant can seize. [*United States v. Property Belonging to* ] *Talk of the Town Bookstore,* 644 F.2d [1317] at 1319 [ (9th Cir.1981) ]. If the needed affidavits are not *attached to* the warrants, then neither purpose is served. Consequently, in this case the affidavits may not be considered in determining whether the warrant is facially overbroad.

*Id.* at 1355 (emphasis supplied). The use of the emphasized phrase commands our attention now, but we did not assign it any real significance then. There is no reason why an affidavit attached to and incorporated by reference in a warrant would be sufficient, where an affidavit accompanying the warrant and incorporated by reference would not, "both to limit the officer's discretion and to inform the persons subject to the search what items the officers executing the warrant can seize." We do not believe that our opinion in *Hayes* was meant to suggest otherwise. Indeed, it makes little sense to think that we would state the applicable rule (the affidavit must accompany the warrant) and then repudiate it (it is not enough that the warrant accompany the affidavit, they must be physically attached) in the space of a single paragraph. In short, *Hayes* does not support the view that an accompanying affidavit cannot be considered in the particularity inquiry unless it is physically joined to the search warrant.

We next visited the issue of cure by affidavit in *United States v. Spilotro,* 800 F.2d 959 (9th Cir.1986). In *Spilotro,* we refused to construe the affidavit and the warrant together, observing that the affidavit "was not *attached to* and incorporated by reference in the warrant as required by this court's decision in *Hillyard. . . .*" *Id.* at 967 (emphasis supplied). Here for the first time we articulated the governing rule in terms of "attachment," rather than saying that the affidavit must "accompany" the warrant. It is apparent, however, that in doing so we ventured beyond the *Hillyard* decision, which required not that the affidavit be "attached to," but simply that it "accompany" the warrant.

*Spilotro,* however, gives no indication that this change in terminology was the result of a considered, intentional choice reflecting any sort of judgment as to the superiority of a rule requiring that the affidavit be physically attached to the search warrant. Nor is there any suggestion in the opinion that the shift from "accompany" to "attached" was meant to effect a substantive change in circuit law. Indeed, *Spilotro* seems to understand itself as a straightforward application of *Hillyard.* This should not be surprising: then-Judge Kennedy authored both opinions.

It may be that *Spilotro*'s shift in terminology was motivated by the fact that a portion of the affidavit did accompany the warrant during the search—the executing officers were provided with copies of certain parts of the affidavit. As a rhetorical matter, substituting "attached" for "accompany" served to de-emphasize this fact. What matters, however, is that the reasoning of the opinion does not turn in any measure on the difference between the two concepts. The affidavit in *Spilotro* was "a nonindexed, unorganized, day to day narration, 157 pages in length." *Id.* We concluded that, "[g]iven the nature of the affidavit and the fact that [the executing officers] were given but a small portion of it, the government's argument that they were somehow constructively guided by the affidavit in executing the warrant is unpersuasive." *Id.* Thus, the dispositive considerations in the case were the unfocused nature of the affidavit and the failure to incorporate it into the search warrant. That the affidavit was not physically attached to the search warrant played no part whatsoever in our analysis.

Subsequently, we employed the language of *Spilotro* in *United States v. Fannin,* 817 F.2d 1379 (9th Cir.1987), holding that any lack of particularity in the warrant was of no effect because "a descriptive affidavit [had] been attached to and incorporated in the warrant." *Id.* at 1384. Then, in *Luk, supra,* we returned to *Hillyard* for the applicable rule: "*Hillyard* requires that the affidavit accompany the warrant and that it be expressly incorporated into the warrant by reference." 859 F.2d at 676 n. 8.

Most recently, we applied the cure-by-affidavit rule in *Center Art Galleries–Hawaii, Inc. v. United States,* 875 F.2d 747 (9th Cir.1989). There we stated that "[a]n affidavit can cure the overbreadth of a warrant if

the affidavit is 'attached to and incorporated by reference in' the warrant." *Id.* at 750 (quoting *Spilotro*). We then held that the affidavit could not be relied upon to provide the particularity lacking in the warrant because "the affidavit was not expressly incorporated into the warrant." *Id.* "Moreover," we noted, "although the government alleges that some of its officers had copies of the affidavit, the government does not claim that the affidavit was physically attached to the warrants or was given to [the persons searched] as part of the search." *Id.* Although this could be read to suggest that the affidavit must be physically attached to the warrant to be deemed a part of it, we do not assign controlling weight to any such suggestion. In the first place, the opinion makes clear that the primary ground of our decision was the warrant's failure to incorporate the affidavit by reference; we then offered a further observation, indicating that it was of secondary importance, and unnecessary to the conclusion we reached. In addition, we expressly noted that the warrant was not served upon the individuals whose premises were searched, thus indicating that our real concern was not so much that the affidavit be physically attached to the warrant, but that

the affidavit operate in some fashion to "assure[ ] that 'the person being searched has notice of the specific items the officer is entitled to take.' " *Id.* (quoting *Talk of the Town Bookstore*, 644 F.2d at 1319).

### B

There is, obviously enough, a degree of confusion in our decisions. There is, however, no conflict among them, and they do not support appellees' position here.

All of our cases say that a separate document must be expressly incorporated by reference in the search warrant before it will be construed as part of it. Some of our cases say that, in addition, this document must accompany the search warrant; others say the two must be attached. But in no case have we ever held that an affidavit that *was* expressly incorporated by reference and that *did* accompany the warrant when the search was authorized and carried out could not be treated as part of the warrant because it was not physically attached to it. Indeed, we have never even intimated such a view, for we have never been presented with such a case.[5]

---

**5.** What we have observed in our own cases is mirrored in those decided in the other circuits: never, so far as we can tell, has an affidavit or other document incorporated by reference into a search warrant been disregarded by a reviewing court because, although it did accompany the warrant, it was not physically attached to it.

Beyond this, there is little else that can be said in general. There are cases that state (in dictum) that the affidavit must be physically attached to the warrant to be construed together with it. *See United States v. George*, 975 F.2d 72, 76 (2d Cir.1992); *United States v. Leary*, 846 F.2d 592, 603 (10th Cir.1988). In an even larger number of decisions, however, the rule is said to be that an incorporated affidavit may be read as part of the warrant so long as the one accompanies the other during the search. *See United States v. Morris*, 977 F.2d 677, 681 n. 3 (1st Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1588, 123 L.Ed.2d 155 (1993); *United States v. Blakeney*, 942 F.2d 1001, 1024 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992); *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C.Cir.1990); *United States v. Curry*, 911 F.2d 72, 77 (8th Cir.1990), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991); *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir.1982), *cert. denied*, 459 U.S. 1214, 103

S.Ct. 1212, 75 L.Ed.2d 450 (1983). We also find authority for the proposition that incorporation by reference alone is enough to make the incorporated description a part of the warrant. *See United States v. Dale*, 991 F.2d 819 (D.C.Cir. 1993) (per curiam). And there are even cases in which an affidavit that was *not* specifically incorporated by reference has been permitted to provide the particularity lacking in the warrant itself, on the ground that the affidavit was available during the search, leaving the executing officers in a position to be aided by the information it contained. *See United States v. Gahagan*, 865 F.2d 1490, 1496–98 (6th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989); *United States v. Wuagneux*, 683 F.2d 1343, 1351 n. 6 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *see also United States v. Tagbering*, 985 F.2d 946, 950 (8th Cir.1993) ("An affidavit may provide the necessary particularity for a warrant if it is *either* incorporated into or attached to the warrant *or* is merely present at the search.") (citation and internal punctuation omitted, emphasis supplied). In still other decisions, however, courts have expressly rejected these "less exacting" approaches. *Curry*, 911 F.2d at 77 n. 4 ("the affidavit must both accompany the warrant and be incorporated into it"); *see Leary*, 846 F.2d at 603 n. 20.

As a matter of principle, a flat rule requiring physical attachment would make little sense. "The purpose of the particularity requirement is to make general searches impossible. The evil to be prohibited is the exploratory rummaging in a person's belongings." *United States v. Holzman*, 871 F.2d 1496, 1508 (9th Cir.1989) (citations and quotation marks omitted). Particularized descriptions serve this purpose by ensuring that "the discretion of the officers executing the warrant is limited," and that "the person being searched has notice of the specific items the officer is entitled to seize." *Talk of the Town Bookstore*, 644 F.2d at 1319; *accord Center Art Galleries*, 875 F.2d at 750; *Spilotro*, 800 F.2d at 967; *Hayes*, 794 F.2d at 1354–55. Such descriptions also help to guarantee "that the magistrate issuing the warrant is fully apprised of the scope of the search, and can make the determination that the search in all its dimensions is based upon probable cause...." *Hillyard*, 677 F.2d at 1339.

The documents that are in fact relied upon to serve these varied functions simply *are* "the search warrant" for purposes of constitutional analysis. The warrant requirement is a means of preventing arbitrary and unreasonable invasions of privacy; the search warrant itself is the tangible evidence that precautions have been taken to ensure that no such invasion has occurred. When the officer who requests authorization for the search, the magistrate who grants such authorization, and the officers who execute the search expressly rely upon a given set of papers containing a given series of words, they identify *that* set of papers and *that* series of words as. the proof that proper precautions were taken to prevent an unreasonably invasive search. Fairness and common sense alike demand that we test the sufficiency of the precautions taken—that is, that we conduct the particularity and overbreadth inquiries—by examining *that* evidence.

Stated differently: if Officer Buckland relied upon Attachment B to apprise Judge Damron of the scope of the proposed search of Treiber's residence, and if Judge Damron similarly relied upon Attachment B in determining that the search was based upon probable cause and particular descriptions, and if the officers who executed the search again relied upon Attachment B to tell them what to search for, and to inform Treiber what they were entitled to seize—if, in short, Attachment B actually served all the purposes that underlie the warrant requirement in the first place, what sense would there be in saying that Attachment B is not a part of the search warrant, notwithstanding that it was not physically attached to its other parts?

The only argument that speaks in favor of requiring that an incorporated affidavit be physically attached to a search warrant in order to be considered part of it is a prudential one: such a bright-line rule, it could be maintained, serves a useful prophylactic purpose, for it ensures that the attention of magistrate and officer alike will necessarily be drawn to the contents of the affidavit, and that the person searched will receive notice of the precise extent to which he must endure the invasion of his privacy. While we appreciate the force of this argument, it does not persuade us that we should adopt a rule that goes beyond what is required by our prior decisions. As we observed earlier, if an affidavit or other document is expressly incorporated by reference in the warrant, then there is no reason to expect that the magistrate, the officer, and the person searched will fail to be guided by its contents, so long as it is actually at hand when the search is authorized and executed. By remaining "rigid" in our insistence on both these requirements, *Luk*, 859 F.2d at 676 n. 8, we can properly "assure that the affidavit actually limits 'the discretion of the officers executing the warrant,'" and "that 'the person being searched has notice of the specific items the officer is entitled to seize.'" *Center Art Galleries*, 875 F.2d at 750 (quoting *Talk of the Town Bookstore*, 644 F.2d at 1319). We simply do not believe that the Constitution requires us to draw the line between lawful and unlawful searches according to the presence or absence of a staple, a paper clip, a bit of tape, or a rubber band.

C

■ There is no question that Attachment B was incorporated by reference in the

search warrant. The record is unclear, however, whether a copy of this attachment was present when the search was executed. On remand, the district court must resolve this factual issue. If a copy of Attachment B was presented to Judge Damron, if he relied upon the description it contained in authorizing the search, and if that description was made available to Treiber and to the officers who executed the search, then Attachment B is part of the search warrant. The particularity of the warrant would then have to be tested with reference to the description contained in Attachment B.

## IV

The district court held that the search warrant was facially overbroad, and that this overbreadth was so pronounced that the executing officers could not reasonably have relied upon it, making the good faith exception to the exclusionary rule inapplicable. This conclusion was based on the court's belief that, because the copy of the search warrant contained in the state court file had no Attachment B, the warrant wholly failed to describe the items to be searched for and seized. Since we have rejected this reasoning, the conclusion based upon it must, of course, equally be rejected.

We observe that, even if the district court finds that not all of the requirements set forth in this opinion were met, so that Attachment B cannot be considered an integral part of the search warrant as a matter of law, it does not follow that the good faith exception cannot apply. We have, it is true, consistently recognized that under the Supreme Court's decision in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), a warrant may be "so facially overbroad as to preclude reasonable reliance by the executing officers." *United States v. Michaelian,* 803 F.2d 1042, 1046 (9th Cir.1986). And we acknowledge that if Attachment B is not considered as part of this warrant, then, technically, it will have to be deemed facially overbroad. Yet we have been expressly and repeatedly warned against taking "an overly technical view of the validity of search warrants and the application of the exclusionary rule." *Luk,* 859

F.2d at 675 (citing *Leon* ). "[A] realistic and pragmatic approach to the exclusionary rule is required" by the Supreme Court's decisions in this area. *Id.* at 676 (citing *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987)).

The inquiry mandated in connection with the good faith exception "focuse[s] exclusively on whether there was an objective[ly] reasonable basis for the mistaken belief of the executing officers that the warrant was valid." *Michaelian,* 803 F.2d at 1047 (citing *Massachusetts v. Sheppard,* 468 U.S. 981, 988, 104 S.Ct. 3424, 3427–28, 82 L.Ed.2d 737 (1984)). As a rule, if a warrant is facially defective for want of particularity, an objectively reasonable belief in its validity will be impossible, a fact our cases acknowledge. But this general rule cannot be allowed to overwhelm the principle on which it is based, or to blind us to the realities of a specific situation.

When we say that a warrant may be so facially deficient that it precludes reasonable reliance, what we mean is that "[o]fficers poised to conduct a search should be able to ascertain that such a warrant fails to offer sufficiently detailed instruction and instead leaves them guessing as to their task." *Ortiz v. Van Auken,* 887 F.2d 1366, 1370 (9th Cir.1989). "[O]fficers attempting to execute a warrant so facially overbroad that it precludes reasonable reliance will recognize, even after the warrant leaves the hands of the magistrate, that it fails to offer guidance." *Id.* at 1371 (citing *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420–21; *Center Art Galleries,* 875 F.2d at 753–54). We thus believe that under the unusual circumstances of this case, the good faith exception to the exclusionary rule might well be applicable even if the warrant must be deemed facially invalid as a technical matter. The record suggests that Officer Buckland believed that Attachment B set forth a list of certain items he had been validly authorized to seize. To conclude that the warrant was "so facially overbroad as to preclude reasonable reliance" would require a finding that it was objectively unreasonable for Officer Buckland to hold such a belief, that is, that he should have recognized that the warrant on

which he proceeded "fail[ed] to offer sufficiently detailed instruction," even though Attachment B was expressly incorporated by reference in that warrant, and even though Judge Damron authorized the search.[6]

In short, nothing has thus far been brought to our attention that forecloses the possibility that Officer Buckland believed Attachment B was part of a valid search warrant, that the search was carried out in keeping with this belief, that it was held in good faith, and that it was objectively reasonable. Should the issue of the good faith exception arise on remand, it should therefore receive careful consideration.

## V

The district court's order suppressing the fruits of the search of Treiber's residence is VACATED, and the case REMANDED for further proceedings not inconsistent with this opinion.

---

**6.** In deciding whether a warrant reasonably *could* have been relied upon by the executing officers, we have examined whatever descriptions they reasonably *did* rely upon in conducting the search. For example, in *United States v. Luk* we held that an affidavit could not "be construed to cure the warrant's particularity defect because the affidavit was not expressly incorporated into the warrant by reference." 859 F.2d at 676. Observing, however, that the officers in fact relied upon the affidavit in conducting the search, we further held that the warrant could be "construed in conjunction with the affidavit" for purposes of the good faith exception, and that, so construed, the warrant "was not 'so facially overbroad as to preclude reasonable reliance by the executing officers.'" *Id.* (quoting *Michaelian* ). That the record did not disclose "whether the

affidavit was actually in hand during the search" did not affect our conclusion, because the officers who executed the search had been briefed as to its contents, and the officer who requested the warrant "was present at the premises and advised the agents concerning what items were properly within the scope of the search." *Id.* at 677 & n. 10. Other courts have followed the same approach we employed in *Luk* when faced with similar situations. *See, e.g., United States v. Beaumont,* 972 F.2d 553, 561–62 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993); *United States v. Maxwell,* 920 F.2d 1028, 1034 (D.C.Cir.1990); *United States v. Curry,* 911 F.2d 72, 76–77 (8th Cir. 1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).