**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                          No. 96-4646

ROBERT RUHE,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-95-3)

Argued: April 11, 1997

Decided: May 22, 1997

Before HALL, WILKINS, and NIEMEYER, Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Zelda Elizabeth Wesley, Assistant United States Attor-
ney, Clarksburg, West Virginia, for Appellant. Paul Francis Linn,
MICHAEL, BEST & FRIEDRICH, Milwaukee, Wisconsin, for
Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney,
Clarksburg, West Virginia, for Appellant. David J. Cannon,
MICHAEL, BEST & FRIEDRICH, Milwaukee, Wisconsin, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The Government appeals an order of the district court suppressing evidence obtained during a search of Robert Ruhe's residence, contending that the court erred in concluding that the search warrant did not adequately particularize the items to be seized. For the reasons that follow, we reverse.

I.

In June 1995, a confidential informant contacted the Federal Aviation Administration concerning the possession of stolen airplane parts by Robert Ruhe, the owner of two aviation companies headquartered in Leipsic, Ohio. The informant identified, by serial number, 13 parts that he believed had been stolen from Pratt & Whitney Corporation (Pratt & Whitney) in West Virginia. According to the informant, five of the parts were located at one of Ruhe's business locations and the other parts were possibly at another business location, in Ruhe's home, or in airplanes repaired by Ruhe. Special Agent James Kelleher of the Department of Transportation forwarded the list of serial numbers to Pratt & Whitney, which confirmed that the parts had been stolen from its "scrap" area.**1**

On September 12, Agent Kelleher and Special Agent J. C. Raffety of the Federal Bureau of Investigation interviewed Gary Byard, the Pratt & Whitney employee responsible for the scrap area. Byard, a former employee of Ruhe's, informed the agents that Ruhe had contacted him shortly after he began his employment with Pratt & Whitney in 1991, inquiring whether Byard could remove usable parts from the scrap area and sell them to Ruhe. Byard stated that he made

_____

**1** The scrap area contained some repairable parts and some parts that were no longer usable.

2

approximately 20 trips to Ohio annually to deliver stolen parts, that he delivered the parts to Ruhe's businesses or to his home, and that Ruhe paid him $1,500 to $2,000 for each delivery. In all, Byard estimated that he had delivered between 500 and 1,000 stolen parts to Ruhe. Shortly thereafter, Byard placed a consensually monitored telephone call to Ruhe during which Byard informed Ruhe that Pratt & Whitney was planning to relocate its scrap area, thereby eliminating his ability to obtain parts. Ruhe requested certain parts and subsequently arranged for Byard to deliver the parts to Ruhe's residence. Pursuant to these arrangements, a controlled delivery of Pratt & Whitney parts was scheduled for October 7, 1995.

Based upon an affidavit containing this information, Agent Raffety obtained a search warrant for Ruhe's residence from the United States District Court for the Northern District of Ohio. The warrant contained the following description of the items to be seized:

> Aircraft components to include but not limited to P-T blades; compressor hubs; P-T wheel; CT disc, checkbook and register, financial records; as well as any other fruits and instrumentalities of this crime. To include specifically three sets PT blades; 1 PT disc SN38171; 1 compressor hub SN 3N497; and 1 CT disc SN 2B296.

J.A. 10. The items identified by serial number were those comprising the controlled delivery.

The warrant was executed by Agents Raffety, Kelleher, and others after completion of the controlled delivery. In addition to the items in the controlled delivery, the search of Ruhe's residence revealed multiple aircraft parts located in a basement storage area. Each of these parts was prominently marked with a red tag identifying it as a scrap part belonging to Pratt & Whitney. The agents seized these parts as well as numerous documents and financial records.

Ruhe subsequently was indicted for conspiracy to commit an offense against the United States, see 18 U.S.C.A. § 371 (West 1966 & Supp. 1997), and transportation of stolen goods in interstate commerce, see 18 U.S.C.A. § 2314 (West Supp. 1997). Ruhe thereafter moved to suppress the evidence obtained during the search of his

3

home. The motion was referred to a magistrate judge, who concluded that the warrant was insufficiently particular in that it failed to include the serial numbers of the 13 parts known to be stolen from Pratt & Whitney, failed to provide officers executing the warrant with a means of distinguishing between contraband and legitimately owned parts, and failed to limit appropriately the seizure of financial records. Moreover, the magistrate judge found that the deficiencies in the warrant could not be cured by the affidavit. Finally, the magistrate judge concluded that the warrant was invalid on its face, thereby precluding good faith reliance on it. The district court adopted the recommendation of the magistrate judge in full, and the Government now appeals.

II.

In order to be valid under the Fourth Amendment, a search warrant must, inter alia, "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The purpose of this particularity requirement is to avoid"a general, exploratory rummaging in a person's belongings." Andresen v. Maryland, 427 U.S. 463, 480 (1976) (internal quotation marks omitted); see generally Stanford v. Texas, 379 U.S. 476, 481-85 (1965) (describing history and purpose of particularity requirement). A sufficiently particular warrant describes the items to be seized in such a manner that it leaves nothing to the discretion of the officer executing the warrant. See Marron v. United States, 275 U.S. 192, 196 (1927). Although we ordinarily would begin our review of the decision of the district court by determining whether it erred in concluding the warrant failed to adequately particularize the items to be seized, we need not address that question here because even if the warrant was invalid, the evidence obtained during the search nevertheless was admissible pursuant to the good faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897, 913 (1984).

The normal remedy for a violation of the Fourth Amendment is suppression of the fruits of the invalid search. See Mapp v. Ohio, 367 U.S. 643, 648-49 (1961). However, evidence obtained in objectively reasonable reliance on a warrant is admissible even if the warrant subsequently is determined to be invalid. See Leon , 468 U.S. at 922. This exception to the exclusionary rule is subject to several limitations. See id. at 922-23. Here, the district court determined that the lack of par-

4

ticularity in the warrant rendered it facially deficient, thereby precluding good faith reliance. See id. at 923 (explaining that "depending on the circumstances of the particular case, a warrant may be so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid"). We review de novo the determination of the district court that the good faith exception to the exclusionary rule does not apply. See United States v . George, 975 F.2d 72, 77 (2d Cir. 1992).

In deciding whether application of the good faith exception to the exclusionary rule is appropriate, we must consider"whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon , 468 U.S. at 922 n.23. This inquiry is objective in nature, depending upon the understanding of a reasonable officer in light of the totality of the circumstances. See United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), cert. denied, 116 S. Ct. 1558 (1996). A warrant that fails to particularize the place to be searched or the items to be seized is so facially deficient that it precludes reasonable reliance only when "[o]fficers poised to conduct a search [would] be able to ascertain that [it] fails to offer sufficiently detailed instruction and instead leaves them guessing as to their task." United States v. Towne, 997 F.2d 537, 549 (9th Cir. 1993) (internal quotation marks omitted; first alteration in original).

We determine that the warrant in this case was not so facially deficient as to preclude reasonable reliance on it. First, the warrant plainly specified that the items to be seized consisted of various airplane parts and financial records. Thus, it did not fail to give the searching officers any guidance whatsoever as to the subject of the search. Cf. id. (noting that warrant stating "See Attachment B" in area for description of items to be seized would be technically invalid if "Attachment B" did not accompany the warrant).

In addition, we must consider the knowledge of the searching officers in assessing the objective reasonableness of reliance on the warrant. See Massachusetts v. Sheppard, 468 U.S. 981, 989 & n.6 (1984) (weighing the fact that the officer who requested the warrant was also the officer who conducted the search in determining that the search

5

was conducted in good faith reliance on a defective warrant); United States v. Curry, 911 F.2d 72, 78 (8th Cir. 1990) (observing that "in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed"). Agent Raffety, who obtained the search warrant, also participated in the search and knew that the purpose of the search was the discovery of stolen Pratt & Whitney aircraft parts and the recovery of documents related to the purchase of such stolen parts. Moreover, the affidavit prepared by Agent Raffety in support of his request for the search warrant described the items to be seized with sufficient particularity.**2** It thus was reasonable for Agent Raffety to believe that the district court had properly issued the warrant in accordance with the facts set forth in the affidavit. See Sheppard, 468 U.S. at 989 n.6 (holding that application of good faith exception was justified by the fact that "the officer who directed the search[ ] knew what items were listed in the affidavit presented to the judge, and he had good reason to believe that the warrant authorized the seizure of those items"); see also Leon , 468 U.S. at 921 (observing that officers "cannot be expected to question the magistrate's . . . judgment that the form of the warrant is technically sufficient").

_____

**2** The reservations of the district court concerning the sufficiency of the affidavit are unfounded. Of particular concern to the district court was the failure of the affidavit or the warrant to identify by serial number the 13 parts known to have been stolen from Pratt & Whitney. However, in view of the fact that the information available to the investigating agents revealed that as many as 1,000 stolen Pratt & Whitney parts had been delivered to Ruhe, listing the 13 serial numbers would not have advanced the interests protected by the particularity requirement. See United States v. Bright, 630 F.2d 804, 811-12 (5th Cir. 1980). The concern of the district court that neither the affidavit nor the warrant mentioned the red "scrap" tags is similarly without basis. Agent Kelleher testified during the suppression hearing that the officers had no knowledge that the Pratt & Whitney parts could be identified by the red tags prior to the execution of the search warrant. Finally, the portion of the warrant directing the seizure of "financial records [and] other fruits and instrumentalities of this crime," J.A. 10, is particularized adequately by the description of the crime contained in the affidavit. See United States v. Wuagneux, 683 F.2d 1343, 1350-51 & n.6 (11th Cir. 1982).

6

Accordingly, we hold that the good faith exception to the exclusionary rule applies here.

III.

Because we conclude that reliance on the search warrant was objectively reasonable, suppression of the evidence obtained during the search was inappropriate. We therefore reverse.

<u>REVERSED</u>

7