UNITED STATES of America,
Plaintiff–Appellee,

v.

Vincent Bryce LAMBERT and Audra Brown Lambert,
Defendants–Appellants.

No. 88–8716.

United States Court of Appeals,
Eleventh Circuit.

Nov. 14, 1989.

---

Herbert Shafer, Atlanta, Ga., for V. Lambert.

Paul H. Kehir, Snellville, Ga., for A. Lambert.

Mary Jane Stewart, Asst. U.S. Atty., AUSA, Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH, Circuit Judge, HILL\*, Senior Circuit Judge, and POINTER\*\*, Chief District Judge.

POINTER, Chief District Judge:

Audra and Vincent Lambert were convicted of conspiring to possess (Count 1), and possessing (Count 2), cocaine with the intent to distribute it. Vincent was also convicted (Count 3) of carrying a firearm while committing these offenses. Audra appeals from her conviction on Counts 1 and 2; Vincent appeals only from his conviction under Count 3. Stressed by appellants during oral argument were Audra's claim that a search warrant was issued without the requisite supporting affidavit and Vincent's claim that the trial court committed error by failing to give an *erroneous* instruction to the jury. We affirm.

## I. Audra Lambert.

Audra Lambert challenges the warrantless search of her car incident to her arrest, arguing that the officers lacked probable cause to arrest her. She also challenges the search of her home the following day, asserting that the warrant for the search was obtained from the Magistrate without any supporting affidavit and that the search exceeded the scope of the warrant. Finally, she challenges the sufficiency of the evidence to support her conviction on the possession charge, Count 2. We first address this latter contention because a discussion of the evidence places in context her claim that she was arrested without probable cause.

### A. Sufficiency of Evidence.

■ Sufficiency of the evidence is reviewed according to the standard stated by the Supreme Court in *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942): "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *See, e.g., United States v. Greer*, 850 F.2d 1447, 1450 (11th Cir.1988). Viewed in the light

most favorable to the prosecution, the evidence establishes the following:

In early October 1987, Vincent Lambert asked his old friend, Andread Shivers, to fly with his wife (Audra Lambert) from Atlanta to Miami and then return by bus to insure that a fourth individual brought a package to Atlanta. Vincent said that Shivers was better off not to know what would be in the package, but referred to it as "that girl", a street reference to cocaine.

Although not present during this conversation, Audra called Shivers the next day to see if she had decided to go with her to Miami. Shivers agreed to make the trip.

Audra picked Shivers up and took her to their house, where Shivers spent the night. Vincent and Audra asked Shivers to carry some money to Miami, and Audra taped some money to Shivers' back, as well as some between her own thighs. On the drive to the Atlanta airport, they picked up Tony Davis. The four flew to Miami, using tickets purchased by the Lamberts.

While in a Miami motel room shared with Audra, Shivers removed the money from her body and took a nap. When she awoke, a fifth individual—identified as "Al"—was in the room with them. Shivers noted that, after Vincent and Al left the room, the money was gone. When Vincent returned, he had the gray bag which Davis had brought from Atlanta and told Shivers to make sure Davis got back to Atlanta with the bag. Vincent gave Shivers money for the bus trip to Atlanta.

Vincent, Audra, Shivers and Davis took a cab to the bus station, where tickets were bought for Shivers and Davis. Audra gave Shivers three telephone numbers to call if anything went wrong. Shivers and Davis, carrying the bag, then departed on the bus.

At Fort Lauderdale narcotics officers boarded the bus, arrested Shivers and Davis and took the bag, which contained

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Sam C. Pointer, Jr., Chief U.S. District Judge for the Northern District of Alabama, sitting by designation.

approximately three and one-half kilograms of cocaine. Shivers agreed to cooperate with the authorities. Approximately half of the cocaine was removed from the bag; the remainder was left in the bag for the expected controlled distribution.

Audra and Vincent, who had flown back from Miami, arrived at the Atlanta bus depot in separate cars a few minutes before the Miami bus was scheduled to arrive. After speaking briefly to Audra, Vincent went inside the depot alone. Shivers, who along with narcotics agents had reboarded the bus shortly before its arrival, handed Vincent the bag, explaining that Davis had gotten off the bus earlier.

Vincent walked away carrying the bag, with his other hand in a pocket of his windbreaker. When arrested, he refused to remove his hand from the jacket, even after one agent placed the barrel of a gun to his head. Ultimately the agents were able to get Vincent's hands into the air, and inside his pants behind the front belt buckle they found a loaded Rossi .38 special caliber revolver.

The officers then arrested Audra, who had continued to wait outside in the second car. Among the items found in the car during a search following her arrest were the bag that Shivers had taken for her overnight stay with Lamberts, a telephone beeper, and coupons reflecting the airline flights of the Lamberts, Shivers, and Davis. The following day agents obtained and executed a search warrant of the Lamberts' home, where they found paraphernalia used in the distribution of cocaine, additional weapons, and almost $90,000 in cash.

This evidence provides ample support for the jury's determination that Audra was guilty under Count 2 of possession with intent to distribute—not, obviously, for any personal possession, but rather for aiding and abetting Vincent in the offense. The jury was instructed about commission of an offense through aiding and abetting another

er, and Audra has not questioned the correctness of those instructions. The circumstantial evidence supports the conclusion that she actively participated in the commission of the crime and acted with the requisite wilfulness. That she would have been unaware that the contemplated crime had been consummated by delivery of the cocaine to Vincent inside the depot is immaterial.

### B. Search of Car.

■ Also without merit is Audra's challenge to the search of her car, which is premised upon the alleged illegality of her arrest. The evidence clearly reflects that the officers had probable cause to arrest her outside the Atlanta bus depot—and this is so whether or not they also would have had probable cause to arrest her earlier.

### C. Search of Residence—Missing Affidavit.

■ Defense counsel moved to suppress the evidence seized during the search of the Lamberts' residence on the basis of the undisputed fact that the court records did not contain an affidavit supporting the application for that search warrant. All agree that this warrant would be invalid under the Fourth Amendment and FED.R. CRIM.P. 41 unless it was supported by an affidavit establishing probable cause.[1] The position of the prosecution is that, whatever may have happened to it later, a legally sufficient affidavit had been submitted to the Magistrate at the time the warrant was sought and approved.

■ We first hold that the failure to file and preserve a supporting affidavit in the clerk's office pursuant to FED.R. CRIM.P. 41(g) does not invalidate an otherwise proper search warrant. Of course, the absence from the court records of an affidavit constitutes some evidence that one did not exist and, depending on the circumstances, may preclude a determination that the warrant was issued on probable cause. However, other evidence may be presented to establish the fact that an

---

1. The prosecution does not contend, for example, that the warrant was, or could have been, issued under the authority of FED.R.CRIM.P. 41(c)(2).

affidavit was presented, as well as its contents.

In the present case the Magistrate conducted a lengthy evidentiary hearing on the defendants' motions to suppress. So far as pertinent to the issuance of the search warrant, the Magistrate's proposed findings of fact were accepted and adopted by the district court. These findings were, in essence, that at the time of obtaining the warrant Roderick Jordan, a state law enforcement officer assigned to the federal drug task force, had executed under oath before the Magistrate both the application and a supporting affidavit; that these documents had been returned to a deputy clerk in the Clerk's office; and that for unknown reasons the application and affidavit had subsequently become separated before docketing and filing, resulting in the loss of the affidavit. The contents of the affidavit were easily established because duplicates of the affidavit had been made and executed, one of which had been filed to support a Complaint.[2]

Although the evidence before the trial court was not without conflict, these findings were not clearly erroneous. Accordingly, Audra's challenge to the validity of the search warrant must be rejected.

### D. Search of Residence—Scope.

■ The warrant issued by the Magistrate respecting the search of the Lamberts' home directed the agents to search for and seize "large amounts of currency, documents relating to the receipt and distribution of controlled substances, weapons, and drug use and trafficking paraphernalia." Audra contends that the agents impermissibly exceeded the scope of this warrant by seizing many irrelevant items and, in essence, by conducting a general exploratory search of the home. The district judge found that the search did not constitute an unlawful "general search", and this finding is not clearly erroneous.

■ A search may be as extensive as reasonably required to locate the objects of

the search. *United States v. Wuagneux*, 683 F.2d 1343, 1352 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). The list of property seized from the Lamberts' residence includes as one of the 24 items "miscellaneous documents showing names, etc." Audra complains that many documents outside the scope of the warrant were seized, such as some utility bills, telephone records, and credit applications. When searching for documents, some perusal may be needed to determine their relevance, *United States v. Slocum*, 708 F.2d 587, 604 (11th Cir.1983); and removal of documents for subsequent review can be appropriate, *United States v. Santarelli*, 778 F.2d 609, 616 (11th Cir.1985).

■ Assuming *arguendo* that some items were seized improperly, Audra has not, however, identified a single such item that was introduced in evidence. Absent a flagrant disregard of the terms of a warrant, seizure of items outside the scope of the warrant does not affect admissibility of items properly seized or constitute reversible error on a direct appeal from the conviction. *See, e.g., Wuagneux, supra*, 683 F.2d at 1354; *United States v. Diecidue*, 603 F.2d 535 (5th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980), 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980).

Even if some improper seizures occurred, the agents did not act in flagrant disregard of the terms of the warrant. Their execution of the warrant can hardly be compared to that involved in *United States v. Rettig*, 589 F.2d 418 (9th Cir.1978), where over 2,000 items were seized on the purported authority of a warrant premised on possession of marijuana, this warrant having been issued the day after an application for a warrant based on cocaine importation had been denied. In holding that all of the seized items should have been suppressed, the court concluded that under the particular circumstances it was not possible to

---

**2.** Audra does not dispute that this affidavit would have provided probable cause for is-

suance of the warrant.

determine the discrete items of evidence which would have been discovered had the agents confined their search in good faith to the objects of the warrant. For another distinguishable example of flagrant disregard for the terms of a search warrant, see *United States v. Medlin,* 842 F.2d 1194 (10th Cir.1988) (667 unauthorized items seized).[3]

## II. Vincent Lambert.

■ Vincent Lambert challenges his conviction on Count 3 under 18 U.S.C. § 924(c), providing an additional five-year term of imprisonment for one who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm."

Vincent contends that the evidence was insufficient to support the jury's finding that the "instrument" seized from him was a firearm for purposes of 18 U.S.C. § 924(c), apparently on the basis of the lack of evidence showing the gun could actually have been fired. However, "firearm" is defined in 18 U.S.C. § 921(a)(3) as including "any weapon ... which will *or is designed to or may readily be converted to* expel a projectile by the action of an explosive." (Emphasis added.) The revolver—a .38 caliber five-shot Rossi special—was introduced at the trial; and the testimony was that, when taken from him during his arrest, it had been fully-loaded. Vincent's argument concerning the sufficiency of the evidence is wholly without merit.

■ The principal ground asserted by Vincent relates to the instructions given—and not given—to the jury with respect to Count 3. In pertinent part, the instructions actually given were as follows:

Title 18, United States Code, section 924(c) makes it a federal crime for anyone to use or carry a firearm during and in relation to the commission of a federal drug trafficking crime. The defendant, Vincent Lambert, can be found guilty of that offense only if all of the following facts are proved beyond any reasonable doubt.

First, that the defendant committed one of the felony offenses charged in counts one and two.

Second, that such offense was a drug trafficking crime.

And third, that the defendant knowingly used or carried the firearm described in the indictment while committing such drug trafficking crime.

Earlier in the charge the judge had defined "knowingly" as follows:

I charge you that the word knowingly as I will be using it in these instructions means that an act is done voluntarily and intentionally, and not because of mistake or accident.

Vincent's counsel does not on appeal—and did not at trial—challenge the correctness of these instructions, which apparently the prosecution had requested and which the court had indicated it would give. Rather, he presses the failure of the court to give the particular charge he had requested:

Before you may find Mr. Lambert guilty of Count III, you must first find that he intended to use the gun as part of and in furtherance of some other illegal activity, if any.

As in essence has now been conceded, this instruction would have misstated the requirements of 18 U.S.C. § 924(c) to the extent it ignored the proscription against carrying a firearm and perhaps implied that Vincent must have planned to discharge or display the gun during commission of the other offenses.

These subtleties were not detected by the court at the charge conference held before closing arguments, and the district judge simply indicated that the charge would be given.[4] Vincent's attorney attempted during closing argument to take advantage of the nuances afforded by his requested charge, arguing with respect to Count 3 as follows:

Now, let me tell you what really troubles me more than anything in this case.

---

3. The mere magnitude of the seizures does not, however, establish a violation of the constitution. *See Wuagneux, supra,* 683 F.2d at 1352.

4. The judge did not state, as she did with respect to certain instructions requested on behalf of Audra, that it would be given "in substance" rather than verbatim.

It is count three. Count three is the charge that Vincent came to that bus station with that gun in order to use it in connection with a cocaine deal. Now, in that regard, I believe the court will charge you that before you may convict Vincent of count three, you must find that he intended to use that gun as part of and in furtherance of the cocaine deal.

Do you understand what I am saying? Mere possession of that gun standing alone is no crime. Now, it is critically important that you distinguish this charge from the mere possession of that gun. The evidence is undisputed in this case. Please let me remind you that the evidence is undisputed in this case that (A) Bryce Motors [Vincent's business] was beleaguered, was broken into, had called and filed complaints with the police department in Jonesboro, the Sheriff's department. They had been broken into. He carried large sums of money, that he bought and sold cars for cash, that he then did not furtively go and buy himself a hot gun, but went to a place where they sell guns, filled out a form, got a gun openly and notoriously, and got a license to carry it openly and notoriously.

Now, that's not the way we criminals operate. If we criminals are going to use a gun in connection with some criminal enterprise, we are going to buy a hot gun. We are not going to get a license for it because if we ever have to use it, we don't want it traced. Is that argument unreasonable?

It is the only area of this case where the government cannot make a valid argument to the contrary. The evidence is simply undisputed.

Now, to find him guilty of that is to suggest that we are defenseless, that if we are operating some rinky dink store, business, or what have you, or even in our home, and if we do everything that society and the laws require of us, if we get a license, if we go to a place that sells guns and buy a gun openly and notoriously, and if we have it on our person, that will automatically inculpate us, and that is not the way it works. That's not the way it is supposed to work.

As long as our society condones possession and use of guns in this sort of context I'm talking about, then he could not honorably, honestly and fairly and squarely be convicted of count three.

After hearing the court's instructions, Vincent's counsel requested outside the presence of the jury that the charge be given as had been earlier indicated, but was unsuccessful.[5]

Claims of error regarding jury instructions are, of course, normally premised upon allegations that erroneous charges were given or that correct charges were neither given nor covered in substance. Error may however occur under FED.R. CRIM.P. 30 in other contexts. For example, the refusal of a judge to advise counsel in advance as to the instructions to be given contravenes Rule 30 and may so impair the effectiveness of argument as to constitute reversible error. *See Wright v. United States*, 339 F.2d 578 (9th Cir.1964). Likewise, the refusal to allow counsel to make objections to the instructions outside the hearing of the jury violates Rules 30 and may result in reversal. *Compare Hodges v. United States*, 243 F.2d 281 (5th Cir.1957) (reversible error) *with Sultan v. United States*, 249 F.2d 385 (5th Cir.1957) (not reversible error).

The Supreme Court, however, has held that the requirements of Rule 30 must be

---

**5.** The colloquy was as follows:

Counsel: [I]f the court please, I respectfully except to the court's failure to instruct the jury in accordance with our only request to charge, particularly since the court granted that request at the pretrial conference, or charge conference, excuse me.

*Court: I thought I had included it. I felt it was duplicative of a part of the government's charge request.*

Counsel: That may be the case, your Honor, but my problem is that relying on the court's having granted my request, I argued in accordance with the language of my request, and now I am sort of—the jury may think I tried to flimflam them when I had a legitimate predicate for arguing and using that very language, and I would respectfully ask the court to charge in that language.

read *in para materia* with FED.R. CRIM.P. 52(a), providing that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *Hamling v. United States*, 418 U.S. 87, 134–35, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590 (1974) (reversal not mandated where no prejudice to defendant). The Court declined to decide whether the defendant has the burden to demonstrate prejudice or whether reversal is proper unless the lack of prejudice is shown.

In a post-*Hamling* case the predecessor of this court likewise declined to choose between the two standards for evaluating prejudice in a Rule 30 context, holding that under the facts of the case the defendants were clearly prejudiced by the giving of an erroneous instruction that modified an essential element of the offense charged. *United States v. Salinas*, 601 F.2d 1279, 1282–85 (5th Cir.1979).

The rule in this circuit is that the defendant must show prejudice before the conviction will be reversed for failure to give a requested instruction contrary to indications given at the charge conference—even where the requested instruction was correct. *United States v. Clark*, 732 F.2d 1536, 1541 (11th Cir.1984). The court noted that this prejudice might arise because the changes were substantial, because the instructions given repudiated counsel's argument, or because the effectiveness of the argument was impaired.

In one sense, the charge here requested by Vincent and the charge actually given were quite similar;[6] and, to the very extent the differences may be viewed as significant, the requested charge would have been an incorrect statement of law. The judge's instructions did not, however, repudiate Vincent's argument and varied from the language of the requested charge only to the extent necessary to eliminate the erroneous connotations latent in it. Vincent's contention on appeal therefore is that the effectiveness of his argument was

impaired because of the court's failure to give the charge in the form requested, albeit erroneous, contrary to earlier statements.

In part, this contention rests on counsel's statement during argument that "I believe the court will charge you that before you may convict Vincent of count three you must find that he intended to use that gun as part of and in furtherance of the cocaine deal." Failure of the court to use the precise words recited by counsel during argument does not, however, necessarily impair the effectiveness of an argument— indeed, the prosecutor here on three occasions during closing argument referred to expected instructions that varied from the instructions ultimately given.

Vincent's counsel did emphasize that mere possession of the gun, standing alone, would not be a crime. This argument, however, was not subverted by the instructions, which required proof beyond a reasonable doubt that, while committing the other offenses, Vincent had used or carried the firearm "voluntarily and intentionally, and not because of mistake or accident." The major thrust of the argument—attempting to premise a defense upon the innocent reasons Vincent may have had for initially acquiring the firearm—would, moreover, have been inconsistent not only with the instruction given, but also with the instruction requested.

Evaluation of prejudice depends upon the nature of the error. Here, with respect to a requested instruction that would have been erroneous, the asserted error was *not* the failure to give the charge, but rather the failure to advise counsel before argument that the charge would not be given. The question is *not* whether Vincent might have been acquitted had the requested charge been given, but rather what would have been the effect had Vincent's counsel been advised that his requested charge would *not*, after all, be given.

In this particular case it is clear that the same verdict would have been returned if

---

**6.** The charge requested was that "you must ... find that he intended to use the gun as part of and in furtherance of some other illegal activity," while the instructions given were that the prosecution "must prove beyond any reasonable doubt ... that the defendant [voluntarily and intentionally, and not because of mistake or accident,] used or carried the firearm ... while committing such drug trafficking crime."

the court's mistake in approving Vincent's requested instruction had been corrected before closing arguments, rather than afterwards. The evidence concerning Vincent's carrying of the weapon at the bus station was overwhelming, and could not really have been disputed. If, knowing of the change in instructions, his attorney had changed his argument on count 3, his only viable argument would have been to challenge the evidence respecting counts 1 and 2 through attacking the credibility of the prosecution's chief witness, Andread Shivers. This was the same theme that dominated Vincent's closing argument, a contention rejected by the jury when it convicted Vincent on counts 1 and 2. We have no doubt that under the evidence the jury would have found Vincent guilty on count 3 regardless of any changes his counsel might have made in the argument had he known his requested charge would not be given.

We are not departing from established precedent by assessing the claim of prejudice in the light of the evidence before the jury and considering the verdict returned on other counts. *See, e.g., United States v. Bollinger,* 796 F.2d 1394 (11th Cir.1986), *modified on reh'g in other parts,* 837 F.2d 436 (1988), *cert. denied,* — U.S. —, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988), where, although confronted with the failure to give a requested instruction that was a correct statement of law, the court evaluated the evidence and the jury's verdict on other counts, and concluded that the jury would have found the defendant guilty even if the charge had been given.

In sum, we conclude that Vincent Lambert was not prejudiced by the court's error in failing to advise his counsel before argument that the requested charge would not be given.

### III. Conclusion.

For the reasons stated, the convictions of Vincent Lambert and Audra Lambert are AFFIRMED.