605 So.2d 545 (1992)
STATE of Florida, Appellant,
v.
Robert JOHNSON, Appellee.
No. 91-03087.
District Court of Appeal of Florida, Second District.
September 18, 1992.
*546 Robert A. Butterworth, Atty. Gen., Tallahassee, and Donna A. Provonsha, Asst. Atty. Gen., Tampa, for appellant.
H. Michael Evans, Clearwater, for appellee.
CAMPBELL, Acting Chief Judge.
In this appeal, the state challenges the trial court's order granting appellee Johnson's motion to suppress and for return of property. While we affirm the suppression, we do so only because the actions of the law enforcement officers executing the search warrant evidenced such a flagrant disregard for the terms of the warrant that the otherwise valid search warrant was converted into an invalid general warrant.
The search warrant here was issued on the basis of the affidavit of Detective Michael DiBuono, who alleged that he had information indicating that Johnson was producing pornographic video tapes in his Dunedin home and was selling them by mail under the name Customized. A concerned citizen had notified law enforcement that certain video magazines advertised X-rated video tapes for sale from a Dunedin post office box, which, law enforcement determined, belonged to Johnson, doing business as Customized. Johnson apparently refused to mail his video tapes within Florida, but would mail them elsewhere. Law enforcement officers successfully ordered a "sample tape" from Customized which contained numerous scenes depicting oral sex and vaginal intercourse. Still photos taken from that sample tape were attached to the affidavit, which described the contents of the sample tape. The sample tape contained scenes from various other video tapes Customized offered for sale, the titles of which were also listed in the affidavit. Enclosed with the sample tape were two brochures listing available video tapes produced by Customized. The affidavit detailed the descriptions of the video tapes advertised in the brochures. The affidavit also stated that Johnson was shipping the video tapes by United Parcel Service.
Based on this affidavit, the trial court issued a search warrant authorizing officers to search for the pornographic video tapes described in the affidavit.
In executing the search warrant, officers followed a systematic plan. Using VCRs and televisions they had brought with them, officers viewed the video tapes, determined *547 whether, in their opinion, they were obscene and seized those video tapes they determined to be obscene. Officers seized not only the video tapes listed in the warrant, but all video tapes that they found to be obscene. Moreover, they seized all copies of each video tape they determined to be obscene.
Finally, the officers seized virtually all of Johnson's office equipment, including records, files, photos, advertisements, blank video tapes, a bookstand, copy paper, pamphlets, clear plastic video tape covers, shipping envelopes, a clock, an IBM typewriter, a file cabinet, notebooks, address books, card files, correspondence, several video cameras and accessories, a sound boom, photo lights with tripod, miscellaneous clothing and props, numerous cameras and accessories, chairs, electric cords, a mirror, a C.D. player, stereo system and a TV/VCR stand. In anticipation of their voluminous find, they had arranged for a van to transport the many items they intended to seize. Johnson testified that the officers "wiped ... out" his business.
In granting Johnson's motion to suppress, the court offered several reasons for doing so, one of which was that the warrant was insufficient under section 933.18, Florida Statutes (1989), which prescribes the circumstances under which a warrant may be issued to search a private dwelling. That section provides, inter alia:
No search warrant shall issue under this chapter or under any other law of this state to search any private dwelling occupied as such unless:
... .
(8) It is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boardinghouse, or lodging house.
The trial court found that Johnson's dwelling did not meet the business purpose exception. She observed that the businesses specifically listed in that exception were businesses to which the "public was invited and expected, and as such, the owner of such a home/business would not have the usual expectation of privacy connected with a private dwelling." The court concluded that Johnson's business, producing sexually explicit video tapes for mail order distribution, was not the type of "public business described in the statute" and, thus, could not be searched under the statute.
Although it is true that statutes authorizing the search of a private home are to be strictly construed, we believe that, under the circumstances here, Johnson's home may be considered to have been used in part as a shop or a store for purposes of the statute.
The American Heritage Dictionary of the English Language, p. 1197 (New College ed. 1979), defines the word "shop" as: "1. A small retail store or a specialty department in a large store. 2. An atelier ["workshop or studio, especially an artist's studio"]; studio. 3. A place for the manufacture or repair of machinery or the like: ... 4. a. Any commercial or industrial establishment. b. A business or other similar activity... ." "Store" is defined as: "1. A place where merchandise is offered for sale; a shop ... 4. A place where commodities are kept; a warehouse or storehouse... ." And finally, "business" is defined as: "1. The occupation, work, or trade in which a person is engaged. 2. Commercial, industrial, or professional dealings; the buying and selling of commodities or services. 3. Any commercial establishment, such as a store or factory... ." We believe that Johnson's business, producing and selling video tapes, qualifies under these definitions as an operation with a business purpose such as a shop or a store.
In this regard, we conclude that the trial judge construed the statute too strictly. She focused too narrowly on the "such as" phrase and on whether any such business was open to the public. The "such as" phrase, however, refers to business purposes, not to businesses. This is significant because a "business purpose such as a store" would appear to focus on the fact that the operation makes sales, while a "business such as a store" seems to refer more directly to an open-to-the-public retail establishment.
*548 The fact that Johnson would not ship to anyone in Florida does not make his operation any less of a business that produced video tapes and offered them for sale. He offered to sell to any individuals who ordered video tapes from out-of-state. He also invited models, business invitees, to come to his home for the purpose of performing in his videos. The fact that Customized did not bear the outward appearances of a business does not eliminate the fact that Johnson was using his home to produce and sell video tapes.
Therefore, because we believe that the production and sale of video tapes is a business whose purpose is to make sales, we conclude that the warrant was properly issued under section 933.18.
This conclusion does not end our inquiry, however. In granting Johnson's motion to suppress, the trial court also found that the officers' actions in executing the warrant evidenced such a flagrant disregard for the terms of the warrant that the search warrant was converted into an invalid general warrant. We agree, and, on this basis, affirm the suppression.
This is precisely the situation against which the Fourth Amendment was intended to protect. See Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); United States v. Medlin, 842 F.2d 1194 (10th Cir.1988) ["When law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant." 842 F.2d at 1199].
The officers here requested and were given permission to search appellee's residence for certain specified pornographic video tapes. However, in executing the warrant, the officers arranged to bring their own VCRs and televisions to view all of the video tapes in Johnson's home in order to make their own obscenity determinations. They then seized not only those video tapes listed in the warrant, but all video tapes which they determined, at the scene, to be obscene.
In addition, the officers seized not only the permissible single copy of each video tape, they seized all available copies of the listed video tapes and of the video tapes they determined at the scene to be obscene. Contrast Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973). They also seized all of Johnson's business records, furniture, file cabinets, office equipment, cameras and accessories, among other things.
The Fourth Amendment requirement "that things to be seized be particularly described is to prevent `a general, exploratory rummaging in a person's belongings.' [Citations omitted.] This is accomplished by removing from the officer executing the warrant all discretion as to what is to be seized... . [T]he particularity requirement is even more stringent where the things to be seized have the presumptive protection of the First Amendment... ." United States v. Torch, 609 F.2d 1088, 1089 (4th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980).
Although the warrant here listed specific items to be seized (the pornographic video tapes listed in the affidavit), the officers seized all of the video tapes that they determined to be obscene. This allowed the officers far too much discretion, and, as such, violated Johnson's Fourth Amendment rights. In this regard, the trial court was correct in suppressing all of the video tapes seized.
The officers also seized virtually all of Johnson's office equipment and records, effectively putting him out of business. None of these items were listed in the search warrant or in the affidavit. Once again, the officers' flagrant disregard for the terms of the warrant requires us to conclude that the court's suppression of these items was proper. See Medlin; United States v. Rettig, 589 F.2d 418 (9th Cir.1978).
Although the state attempts to make a plain view argument as to the items that are not presumptively protected by the First Amendment, in view of the excessive nature of the search, the plain view argument *549 must fail. In Horton v. California, 496 U.S. 128, 138, 110 S.Ct. 2301, 2309, 110 L.Ed.2d 112, 124 (1990), the Supreme Court noted that the plain view doctrine only applies if the "search is confined in area and duration by the terms of the warrant or a valid exception to the warrant requirement." Since the search here was clearly not confined by the terms of the warrant, plain view does not protect those items that were seized and were not arguably protected by the First Amendment, i.e., the office equipment and supplies.
The state also attempts to make a good faith argument. However, the good faith doctrine of United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), only applies where the officers act in an objectively reasonable fashion in executing a search warrant that is subsequently found invalid. No interpretation of these facts would support such an argument here.
We conclude, therefore, that the trial court correctly suppressed all the evidence seized. In reaching our conclusion, we did not believe it necessary to address the prior restraint issue argued somewhat vaguely by both sides because we believe that the court's suppression order may be affirmed solely on the basis of the egregiousness of the officers' actions.
PARKER and BLUE, JJ., concur.