STEPHEN H. ANDERSON, Circuit Judge,
dissenting:
Albert Foster was indicted on twelve federal offenses based oh evidence seized in a search of his property. The items seized in the search involved materials described in a valid search warrant, and numerous additional items. The district court found that the officers conducting the search exhibited flagrant disregard for the terms of the warrant by seizing “anything of value,” and granted Foster’s motion to suppress all the evidence, including that which was covered by the search warrant. The United States appeals the blanket suppression. For the reasons stated below, I would reverse and remand.
I.
On December 16, 1994, a state judge in Sequoyah County, Oklahoma, issued a warrant authorizing a search of Albert Foster’s property, including his house, automobiles, and outbuildings located on the premises. Appellant’s App. at 1. The warrant — the validity of which is undisputed on appeal— authorized the officers to search for the following items:
Remington 12 Ga. shotgun serial #L072083, Taurus Model 85, 38 special Serial #NA44497, 22Ca. Ruger carbine # 120-99025 and a 22 Caliber Ruger Carbine W/green folding stock #23820424 [sic] as well as CDS (Marijuana) .... and evidence of residency in which the stolen property is found.
Id. That same day, at approximately 3:25 p.m., Deputy Sheriff Raymond Martin and several other officers arrived at Foster’s residence to execute the warrant..
During an initial protective sweep, the officers found marijuana plants growing under fluorescent lights in a barn behind Foster’s house; processed marijuana in the house; firearms, primarily in his bedroom; and other related items, including ammunition and drug paraphernalia, located throughout the house and the barn. The Federal Drug Enforcement Administration (“DEA”) was then called in for assistance.
Before the DEA agents arrived, Foster and a young woman in “her twenties,” who identified herself as Foster’s stepdaughter, arrived at the place of the search, and Foster acknowledged that the residence belonged to him. Martin then read Foster his, rights, placed him under arrest, and took him to the county jail. His stepdaughter remained at the house until most of the search was completed.
As the search continued, one of the state officers, Ken Cowart, discovered numerous videotapes and noticed that one of the videotapes was labeled “Coke.” Believing that this videotape was a reference to cocaine, Cowart inserted the tape into the VCR machine and observed Foster and his stepdaughter lying on a couch together in Foster’s living room. Cowart and Greg Wilson, an investigator for the Sequoyah County District Attorney’s Office, then viewed at least five more videotapes. These videotapes contained footage of sexual acts involving Foster and his stepdaughter, footage of marijuana use, and one scene involving three or four young women, *854 who appeared to be minors, smoking marijuana on Foster’s living room couch.
The DEA agents arrived at approximately 5:45 p.m., subsequent to the discovery of the videotapes. Upon arrival, DEA Agent Shannon immediately read the search warrant and Martin’s supporting affidavit. The DEA agents then accompanied Wilson on a tour of the premises, viewed the evidence already discovered, watched a videotape of the crime scene made by Wilson that day, and were informed of the newly discovered videotapes’ content.[10] Agent Shannon then asked all state officers without a specific, assigned task to go outside. The DEA agents then commenced their own search.
The search of Foster’s property was completed around 11:00 p.m. The DEA agents seized “thirty-five listed items including various firearms, ammunition, videotapes, marijuana, drug paraphernalia, and other miscellaneous items.” Appellant’s App. at 46 (Order Granting Def.’s Mot. to Suppress dated September 26, 1995) (“Order”).[11] The state officers seized over sixty items or as Martin conceded on cross-examination, “anything of value,” id. at 81, including:
VCR machines, a socket set[,] a Pro Compound Bow by York, a green pair of coveralls, a riding lawn mower, a tiller, a stereo system, two soft tip microphones, televisions with remote controls, a Dewalt heavy duty drill, a Vivitar camera tripod, a Red Rider BB-gun Daisy Model, a Corona Machete in brown leather ease, a[n] ASAHI Pentex Spotmatic Camera, a Bowie type knife in black sheath, a Yashica camera MAT-124, a Westinghouse clock radio, five hunting knives, a screw driver set, three vehicles, and a small box containing old coins, knives, watch, and jewelry.
Id. at 46 (Order).[12]
A superseding indictment dated February 15, 1995, charged Foster with twelve federal offenses. Foster moved to suppress all the evidence seized from his property because “the search conducted substantially exceeded the scope of the warrant and there was flagrant disregard for the terms of the warrant as to the property to be seized.” Id. at 20. The district court agreed and, relying primarily on United States v. Medlin, 842 F.2d 1194 (10th Cir.1988) (“Medlin II”), determined that a blanket suppression of all evidence seized was warranted because “the state officers ... acted in flagrant disregard for the terms of the warrant.” Appellant’s App. at 50 (Order). The sole issue on appeal, therefore, is whether the district court properly ordered the suppression of evidence lawfully seized by federal agents acting pursuant to a valid warrant, notwithstanding the undisputed seizure of items outside the scope of that warrant.
II.
“ ‘When reviewing an order granting a motion to suppress, “we accept the trial court’s factual findings unless clearly erroneous, and we view the evidence in the light most favorable to the district court’s finding.” ’ ” United States v. Little, 60 F.3d 708, 712 (10th Cir.1995) (quoting United States v. Little, 18 F.3d 1499, 1503 (10th Cir.1994) (en banc) (quoting United States v. Swepston, 987 F.2d 1510, 1513 (10th Cir.1993))). We review de novo, however, the ultimate determination of the reasonableness of a search under the Fourth Amendment. United States v. Callwood; 66 F.3d 1110, 1112 (10th Cir.1995); see Ornelas v. United States, — U.S. -, -, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).
The Fourth Amendment requires that no warrants may issue except those “particularly describing the place to be searched, and the persons or things to be seized.” U.S. Const, amend. IV. “The requirement that *855 warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.” Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 281 (1927). Generally “only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant. But ‘flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search and thus require suppression or return of all evidence seized during the search.’ ” United States v. Medlin, 798 F.2d 407, 411 (10th Cir.1986) (“Medlin I”) (quoting Marvin v. United States, 732 F.2d 669, 674-75 (8th Cir.1984)) (citations omitted). Thus, the relevant inquiry involves a determination of “the effect on the search as a whole of the seizure by the local police of items not named in the warrant.” Id. at 410.
The district court made the following observations in finding that the officers acted in flagrant disregard for the terms of the warrant:
While it is true that a limited number of items listed in the sheriffs return can be classified as contraband or other incriminating evidence inadvertently found during the execution of the warrant, it is abundantly clear from the testimony of Martin, as well as the testimony of Wilson and Cowart, that there was a wholesale seizure of Foster’s property amounting to a fishing expedition for the discovery of incriminating evidence. In fact, upon cross-examination by defense counsel, Martin admitted that the officers “took anything of value” and that this was standard procedure in the execution of a Sequoyah County search warrant. Other than the readily observable firearms, marijuana, and assorted contraband ..., no attempt was made to substantiate a connection between the seizure of the majority of the seized items and the terms of the warrant. As candidly admitted by Martin, the officers simply “took anything of value” and did not adhere to the specific terms of the warrant.
Appellant’s App. at 51 (Order). From these observations, the district court concluded it could not “imagine a-more pronounced case of a search warrant execution conducted in flagrant disregard for its terms” than the instant case. Id. at 52. Consequently, citing Medlin II, the district court suppressed all items seized pursuant to the December 16, 1994, search of Foster’s property, “including those items particularly named in the warrant.” Id. I agree with the majority that the district court’s factual findings are not clearly erroneous, but this conclusion does not end the inquiry. We must also determine de novo the reasonableness of the search and the appropriate sanction for the officers’ misconduct. See, e.g., United States v. Young, 877 F.2d 1099, 1105 (1st Cir.1989).
I emphasize that I do not condone the overreaching employed during the Foster search. But situations demanding the “drastic remedy” of blanket suppression, instead of particularized suppression, are exceedingly rare, and I am not persuaded that this is such a ease. Compare Medlin II, 842 F.2d at 1198-1200 (all items suppressed); United States v. Rettig, 589 F.2d 418, 423 (9th Cir.1978) (all items suppressed), with e.g., United States v. Matías, 836 F.2d 744, 747-48 (2d Cir.1988) (refusing to employ the “drastic remedy” of suppression of all evidence seized because the “normal remedy” of suppressing and returning only the items seized outside the scope of warrant was more appropriate); United States v. Tamura, 694 F.2d 591, 597 (9th Cir.1982) (scolding the government for its excessive and intrusive procedures in a massively overbroad search, but nevertheless holding that the properly seized evidence should be admitted); United States v. Heidi, 668 F.2d 1238, 1259, 1269 (D.C.Cir.1981) (no blanket suppression despite only 201 documents considered pertinent evidence for trial out of over 23,000 separate documents seized in a search lasting over twenty hours and involving over 200 FBI Agents), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982).
At first glance, Rettig (2,288 items seized during a search premised on possession of marijuana) and Medlin II (667 items of allegedly stolen property seized, none of which were identified in the warrant) may seem *856 distinguishable from the instant case (approximately 100 items seized, over sixty of which were arguably seized unlawfully) by simply comparing the number of seized items not listed in the warrant. While this is certainly a factor to consider, “[t]he mere magnitude of the seizures” is not determinative. United States v. Lambert, 887 F.2d 1568, 1573 n. 3 (11th Cir.1989). Instead, the rationale driving the holdings of blanket suppression in Rettig and Medlin II seems to be not only the gross excesses of the officers, but also that the entire searches, from the applications for the warrant to the seizure of the items, had been primarily subterfuges. See Young, 877 F.2d at 1105-06 (citing Medlin II and Rettig as “unusual cases ... where the lawful part seems to have been a kind of pretext for the unlawful part”); Klingenstein v. State, 330 Md. 402, 624 A.2d 532, 537 n. 1 (observing that the police action in Rettig was more an “outright fraud on the court” than “within the ‘flagrant disregard’ concept”), cert. denied, 510 U.S. 918, 114 S.Ct. 312, 126 L.Ed.2d 259 (1993); see also United States v. Ewain, 78 F.3d 466, 470 (9th Cir.1996) (distinguishing Rettig, where “police set up a ruse,” and stating “[w]here the search pursuant to the warrant is a part of a ‘ “serious valid, investigation” and not “a pretense fabricated to mask the [officers’] lack of probable cause” to search for evidence’ of crimes other than that specified in the warrant, the plain view evidence is admissible”) (quoting United States v. Washington, 797 F.2d 1461, 1471 (9th Cir.1986)).
In Rettig, a federal magistrate issued an arrest warrant for Rettig, but declined to issue a search warrant, finding that the probable cause was stale. Federal agents arrested Rettig the following day, but first deceived Rettig by calling him anonymously to “warn” of agents who were on their way with both an arrest warrant and a search warrant. The agents then forced their way into Ret-tig’s house where they found him attempting to flush marijuana down the toilet. Rettig was taken into custody while another agent attempted to obtain a search warrant, from a state judge, based on the flushing incident, without informing that judge of the agents’ unsuccessful attempt just a day before. The Ninth Circuit’s opinion, ordering total suppression, was focused on the deception perpetrated in obtaining the warrant:
We think that in the hands of these agents the warrant ... was used as an instrument for conducting the search for which permission had been denied on the previous day, a search that pertained to evidence of the cocaine charge, not to the possession of marijuana_and we conclude that the search was for purposes and objects not disclosed to the magistrate.
Rettig, 589 F.2d at 421.
In Medlin I, we remanded for a further evidentiary hearing because of our concern that the local officers, specifically Deputy Carter, had manipulated events to create a pretext for a search by the federal agents, thereby enabling themselves the opportunity to “piggy-back” on the federal warrant:
Because of the large number of seized items not listed in the warrant, it is possible the police used this warrant as a pretext for a general search, which would taint the whole search. See United States v. Rettig, 589 F.2d 418, 423 (9th Cir.1978). We therefore must remand this case ... to determine ... whether the improper conduct was so flagrant that exclusion of all seized evidence is warranted.
Medlin I, 798 F.2d at 411.
On appeal after remand, we found “no evidence in the record which indicates that Deputy Carter would have been allowed into the Medlin home if he had not been accompanying [federal] agents armed with the warrant.” Medlin II, 842 F.2d at 1197. We further noted that the federal agents appeared to have aided Deputy Carter’s search activities, that transportation of the unauthorized items was prearranged by Deputy Carter, and that the ATF agents helped Deputy Carter load the illegally seized items. Id. Based on that record, the district court held that Deputy Carter had “employed the execution of the federal search warrant as a ‘fishing expedition.’ ” Id.. at 1199. On appeal, we departed from the general rule, that unlawfully seized items do not affect the admissibility of other contemporaneously seized items which do fall within the warrant, see, e.g., Medlin I, 798 F.2d at 411; United *857 States v. Chen, 979 F.2d 714, 717 (9th Cir.1992) (“This extraordinary remedy should be used only when the violations of the warrant’s requirements are so extreme that the search is essentially transformed into an impermissible general search.”); Young, 877 F.2d at 1105 (Courts are only required to suppress all evidence in those unusual cases where “the lawful and unlawful parts of the search were inextricably intertwined, or where the lawful part seems to have been a kind of pretext for the unlawful part.”) (citing Medlin II, 842 F.2d at *1198-99), and affirmed the district court’s order suppressing all evidence seized under that warrant. Medlin II, 842 F.2d at 1199, 1200.
The “extraordinary remedy” resorted to in Medlin II is exceedingly rare. Foster has not directed our attention to any other cases where lawfully seized evidence was suppressed because other items were also seized in “flagrant disregard” of the limits of the warrant. Our own survey of both state and federal eases yielded only one additional appellate ease, State v. Johnson, 605 So.2d 545 (Fla.Dist.Ct.App.1992), that authorized a blanket suppression due to items seized outside of the warrant. Clearly, “the broad mainstream of case law [considers] particularized exclusion ... an adequate sanction.” State v. Klingenstein, 92 Md.App. 325, 608 A.2d 792, 807 (1992), rev’d in part on other grounds, 330 Md. 402, 624 A.2d 532(Md.), cert. denied, 510 U.S. 918, 114 S.Ct. 312, 126 L.Ed.2d 259 (1993). See generally 2 Wayne R. LaFave, Search and Seizure § 4.10(d) (1996).
Here, there are no findings that the obtaining of the warrant or the conducting of the search were premised on a ruse, as was the case in Medlin II, but rather that the officers were overzealous in their execution of the search. See United States v. Abrams, 615 F.2d 541, 550 (1st Cir.1980) (Campbell, J., concurring) (“It is clear that overzealous execution requires suppression only of any materials seized outside of the warrant’s authority (and the fruits of any such improperly seized material).”). Accordingly, I cannot say that the officers’ excessive behavior mandates the drastic remedy of blanket suppression. I would therefore reverse the district court’s order directing the total exclusion of all items seized and remand for a determination of which seized items are clearly beyond the scope of the warrant and are not otherwise lawfully, seizable and which other items fell within the warrant’s command or are otherwise properly seizable, and which should therefore not be suppressed. Because I do not subscribe to the majority’s expansive view of the exclusionary rule, I dissent.

. A federal search warrant was obtained on December 19, 1994, for the videotapes. The DEA agents then viewed the videotapes and observed numerous sexual exploitation and controlled substance violations involving Foster.

. They also seized “two guns and miscellaneous videotapes [that] were omitted from the return.” Appellant’s App. at 46 n. 3 (Order).

.The DEA agents claimed they "had no idea that that stuff was being taken.” Appellant's App. at 197 (testimony of Agent Shannon). These additional items were all returned to Foster at the DEA's request.