[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 8, 2006**
**THOMAS K. KAHN**
**CLERK**

_____

No. 04-15168

_____

D. C. Docket No. 03-00008-CR-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DWIGHT A. PRATT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 8, 2006)**

Before BIRCH, WILSON and COX, Circuit Judges.

WILSON, Circuit Judge:

Dwight A. Pratt appeals the denial of his motion to suppress evidence used

to secure his convictions. His appeal presents us with the following question:

When a search warrant is lost after its execution and is missing at a suppression hearing, does the Fourth Amendment prohibit the use of other evidence to prove the warrant's existence and descriptive language?  We hold that the Fourth Amendment does not prohibit the use of other evidence to establish the existence and the contents of a lost search warrant.  Therefore, we affirm the district court's denial of Pratt's motion to suppress.  We also affirm Pratt's sentence, finding that the district court committed harmless *Booker*[1] statutory error.

## I. Background

### A. The Search

In early November 2002, Detective Morgan Wysocki of the Leon County, Florida Sheriff's Department used a confidential informant for a controlled buy of 1 gram of powder cocaine from Pratt.  Wysocki later used the confidential informant for a controlled buy of 0.1 grams of crack cocaine from Pratt.  The informant told Wysocki about several handguns she observed inside the residence during the first controlled buy.  During the second controlled buy, Pratt told the informant that he could obtain a handgun to sell to the informant.  Wysocki subsequently prepared an affidavit in support of an application for a search warrant.  He then prepared a search warrant template containing descriptive

---

[1] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

2

language of the place, person, and items to be searched and seized. The template's language was electronically copied from the affidavit.[2]

On December 19, 2002, Wysocki took the affidavit and two copies of the search warrant template to the chambers of Leon County Judge Donald Modesitt, who signed the affidavit and issued a search warrant. That same day, Wysocki and other members of the Leon County Sheriff's Department executed the search warrant at Pratt's residence. Wysocki read the warrant to Pratt. Wysocki seized a loaded semi-automatic pistol, 19 grams of powder cocaine, 60 grams of marijuana, Pratt's wallet containing his identification, and miscellaneous drug paraphernalia. He also completed an inventory of the items seized. Pratt was arrested and copies of the warrant and the inventory were left on the kitchen counter.

Wysocki returned to the office and purportedly made copies of the search

---

[2]  The affidavit's descriptive language states:
> [C]ertain evidence, more particularly described herein below, is being kept in or upon a certain premise located . . . [on] 2026 Autumn Ln, Tallahassee Fl. 32310. The residence is a single wide trailer located approximately .2 miles west of the intersection of Springhill Rd. and Autumn Lane. The front door of the residence faces south. The residence is grey in color with burgundy trim. A white mail box is located at the end of the driveway with the numbers 2026 hand written on the sides. [The original affidavit contains three photographs of the residence.] This is the residence to be searched. Being the premises occupied by or under the control of a blacke [sic] male, known as Dwight Pratt, and there is being kept on or in said premises certain person and evidence of a crime, to wit: Crack Cocaine, Cocaine, records pertaining to the sale, manufacture, possession or delivery of a controlled substance, U.S. Currency, paraphernalia used in the sale, use, manufacture, possession, or delivery of a controlled substance, firearms and any items of identification which tends to establish custody or control over said evidence and occupancy of the residence being searched.

warrant, the inventory, and the affidavit. At the time of the suppression hearing, his files contained copies of the inventory and the affidavit but did not contain a copy of the search warrant. Likewise, the clerk's records contained all but a copy of the search warrant.

Based on the controlled buys and the items seized during the December 19 search, Pratt was indicted for distributing a controlled substance, namely, cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (Count 1) ; distributing crack cocaine in violation of the same statutes (Count 2); possessing with the intent to distribute cocaine in violation of the same statutes (Count 3); possessing a firearm in furtherance of the possession in Count 3 in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4); and possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 5).

## B. Hearing on the motion to suppress

Initially, Pratt filed a motion to suppress, assuming based on the search warrant's absence from the record, that no judge had issued a warrant and that the police only used the affidavit as authorization for the search.[3] The Government countered that a warrant was indeed issued, but was lost after the search. Pratt supplemented his motion by arguing that the Fourth Amendment requires the

---

[3] Pratt also argued that the portion of the affidavit that could possibly be construed as a warrant failed to describe the place, person, and items to be searched and seized.

warrant itself to be produced at trial. Pratt did not allege that the officers or the Government lost the warrant in bad faith.

At the hearing on the motion to suppress, the Government called four witnesses. The first was Judge Modesitt who testified that he did not remember issuing the specific warrant at issue, but that he follows "the same process on every occasion." He testified that every time he is asked to issue a search warrant, he compares the affidavit with the search warrant to make sure the descriptions of the place to be searched and the items to be seized contained in both the affidavit and search warrant match word-for-word, signs the affidavit, and issues the search warrant.[4] The Government introduced into evidence Wysocki's affidavit signed

---

[4] Judge Modesitt repeated the mantra that he always followed the same procedure.

> Q: Could you explain the normal process when a law enforcement officer comes to you seeking a search a warrant?
>
> A: All right. I follow the same process on every occasion . . . . The officer comes in, identifies that he's a law enforcement officer . . . I then place them under oath. They present me with a duplicate copy of an affidavit and the search warrant itself. I review the affidavit first. Once I've reviewed it, they are under oath. I require them to sign it in my presence . . . . I then date it and sign it myself as far as the affidavit is concerned. Then I review the search warrant, which is always submitted to me as a proposed search warrant. It's already prepared. I then compare that search warrant with the affidavit to confirm that it's a duplicate. With the modern processing equipment that we have, the way they do it, they print the affidavit, and then they duplicate it in the search warrant verbatim. I look that over, confirm that it is the same thing, with the exception, of course, is [sic] the final ordering information, is [sic] about the only difference in the affidavit from the search warrant itself. I then sign and date the search warrant in duplicate and present it back to the officer.
>
> . . .

5

and witnessed by Judge Modesitt.  Judge Modesitt testified that he was absolutely sure that he had issued a search warrant with descriptive language identical to the affidavit's.

The Government's second witness was Wysocki who testified that he specifically recalled obtaining the search warrant from Judge Modesitt.  He further testified that he read the warrant to Pratt before conducting the search and that he left a copy of the warrant on the kitchen counter before arresting Pratt.  The Government's third witness was Wysocki's supervisor, Edward Cook, who had been present at the search.  Cook testified that he heard Wysocki read the search warrant to Pratt and that he saw Wysocki place a copy of the search warrant on the

| | |
|---|---|
| Q: | Can you recall ever signing any search warrants where [you did not specifically compare the description of the location, the premises to be searched, as well as the items to be seized]? |
| A: | No.  I follow the same procedure on every occasion.  I confirm that the place to be searched is identical in both the affidavit and the search warrant itself.  I confirm that the subject matter that they are looking for is identical.  I confirm that the probable cause is identical, because they always repeat the probable cause in the search warrant that is in the affidavit . . . . So the search warrant and the affidavit are identical except for the authorizing language. |

. . .

| | |
|---|---|
| Q: | Judge Modesitt, based on your signature on the last page of the affidavit for the search warrant, did you issue a search warrant for a search of the premises of 2026 Autumn Lane in Tallahassee, which is the address on the affidavit? |
| A: | The reason I feel absolutely positive that I did, I follow exactly the same procedure every time . . . . I have never signed an affidavit for a search warrant but that I also issued contemporaneously, immediately, the warrant to search those premises for that property for the same reasons that are in the affidavit.  So, I've done it every single time that I've ever done one without any doubt in my mind. |

kitchen counter. On cross-examination, Cook conceded that he did not know for sure that Wysocki read the search warrant rather than the affidavit. The Government's fourth witness was Special Agent Donald Williams of Alcohol, Tobacco, and Firearms, who testified that he went to the clerk's office to get a copy of the first page of the search warrant only to find that it was missing. Williams was not present at the search. Pratt did not testify nor did he call any witnesses.

Based on this testimony, the affidavit, the inventory, and the parties' arguments, the district court denied Pratt's motion to suppress, finding that a search warrant with descriptive language mirroring the affidavit's existed and that the warrant met the Fourth Amendment's particularity requirement.

## C.    Sentencing

Pratt pled guilty to Counts 1, 2, and 5 of the indictment, reserving his right to appeal the district court's denial of his motion to suppress. He went to trial on the other counts, and was found guilty of a lesser included offense of simple possession with respect to Count 3, in violation of 21 U.S.C. § 844. He was acquitted on Count 4.

At the plea colloquy, Pratt fully preserved his *Booker* (then *Blakely*[5]) claim by filing a written challenge to the mandatory use of the United States Sentencing

---

[5] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

7

Guidelines (the "Guidelines") and by renewing his objection at the sentencing hearing. During the sentencing hearing, which occurred while the Supreme Court was considering *Booker*, the district court judge presciently stated that he would impose the same sentence if the Guidelines were advisory. Pratt was then sentenced to a prison term of 188 months–188 months on Counts 1 and 2, 36 months on Count 3 and 120 months on Count 5, all running concurrently.

## II. Standard of Review

In reviewing a district court's denial of a motion to suppress evidence, we review findings of fact for clear error and the application of the law to those facts de novo. *United States v. Jiminez*, 224 F.3d 1243, 1247 (11th Cir. 2000).

We review Pratt's properly preserved claim of *Booker* error de novo and will not reverse unless the error was harmful. *See United States v. Mathenia*, 409 F.3d 1289, 1291-92 (11th Cir. 2005) (per curiam).

## III. Discussion

We first discuss whether the Fourth Amendment prohibits the Government's use of other evidence to prove a missing search warrant's existence and descriptive language at a suppression hearing, and whether, as Pratt asserts, *Groh v. Ramirez*, 540 U.S. 551, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004), supports this view. Next, we review the district court's factual findings that a search warrant existed

8

and that the warrant's descriptive language mirrored the supporting affidavit's descriptive language; and we review the district court's legal conclusion that the search met the Fourth Amendment's requirements. Finally, we discuss Pratt's *Booker* error claim.

## A. Motion to Suppress

### 1.       The Fourth Amendment and *Groh*

Pratt points to the Fourth Amendment as providing an exception to the general axiom that all relevant evidence is admissible.[6] He argues that the Fourth Amendment requires the exclusion of all evidence, except the search warrant itself, relevant to the determination of a search warrant's existence and descriptive language. The essence of his argument is that a missing warrant creates an irrebuttable presumption that no warrant ever existed or, alternatively, that the missing warrant's descriptive language lacked particularity.

Pratt cites *Groh* for the proposition that a search warrant's descriptive language is so critical to a Fourth Amendment inquiry that it can only be proven by

---

[6] "The provisions that all relevant evidence is admissible, with certain exceptions, and that evidence which is not relevant is not admissible are a presupposition involved in the very conception of a rational system of evidence. They constitute the foundation upon which the structure of admission and exclusion rests." Fed. R. Evid. 402 advisory committee's note (citations and quotations omitted).

introducing the warrant itself. In *Groh*, Joseph Ramirez brought a *Bivens*[7] action against Jeff Groh, a Special Agent for the Bureau of Alcohol, Tobacco, and Firearms (ATF) for violating Ramirez's Fourth Amendment rights when Groh conducted a search of Ramirez's home pursuant to a search warrant describing the person and items to be seized as Ramirez's "two-story blue house rather than the alleged stockpile of firearms." *Id.* at 554, 124 S. Ct. at 1287-88. The magistrate issued the warrant based upon a detailed affidavit that showed probable cause. *Id.* Unlike the search warrant, the affidavit described adequately and particularly the stockpile of firearms that were to be seized. *Id.* at 554, 124 S. Ct. at 1288. In holding that the warrant was "plainly invalid," the *Groh* Court stated that the supporting affidavit's descriptive language "does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 557, 124 S. Ct. at 1289 (emphasis removed). Given this determination, we agree with Pratt's premise that the contents of the search warrant itself, not the contents of the supporting documents,[8] are scrutinized under the Fourth Amendment's particularity

---

[7] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

[8] Search warrants can incorporate by reference the words of supporting documents if the documents are attached to the warrant. *See Groh*, 540 U.S. at 560, 124 S. Ct. at 1291. The warrant in *Groh* did not incorporate the affidavit, however. *Id.* at 554-55, 124 S. Ct. at 1288.

10

requirement. We also agree with Pratt that a supporting affidavit, no matter how perfect, cannot save a facially defective warrant. Where we part ways with Pratt is whether these premises lead to the conclusion that a supporting affidavit, or any other relevant evidence, cannot be used to prove a missing search warrant's existence or contents.

*Groh* is distinguishable from this case. In *Groh*, the search warrant was produced at trial and its descriptive language was known to a certainty. *Id.* at 558, 124 S. Ct. at 1290. The language of the warrant failed to meet the particularity requirement of the Fourth Amendment. In the present case, the parties dispute the warrant's existence and its descriptive language. Yet, there is other evidence to establish the contents of the warrant, supporting particularity. The Government does not need to prove the warrant's existence with certainty, but rather by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14, 94 S. Ct. 988, 996 n.14, 39 L. Ed. 2d 242 (1974).

We decline to accept Pratt's suggestion that the absence of a search warrant at a suppression hearing creates a presumption that there is a Fourth Amendment violation. We find that, when a warrant is not in evidence at a suppression hearing, a prosecutor must prove, by a preponderance of the evidence, the missing search warrant's *exact* language describing the place to be searched and the persons or

11

items to be seized.  *Cf. United States v. Lambert*, 887 F.2d 1568, 1571-72 (11th Cir. 1989) ("Of course, the absence from the court records of an affidavit constitutes some evidence that one did not exist . . . . However, other evidence may be presented to establish the fact that an affidavit was presented, as well as its contents.").  General assertions that a warrant was particular or vague recollections of a warrant's descriptive language cannot satisfy this burden.

The Government in some cases may not be able to prove a search warrant's existence or its exact descriptive language.  In those cases, the search is treated as if it were warrantless and the evidence may be suppressed.[9]  But in cases like the present one, where ample evidence is produced, to prohibit the Government from presenting that evidence would be untenable.  We hold that other evidence of a search warrant's existence and descriptive language may be used in a suppression hearing to prove that a search was conducted with a warrant that particularly described the place to be searched and the persons or items to be seized.[10]  We can now turn to an evaluation of that other evidence to determine whether it is sufficient to support the district court's conclusions.

---

[9]  The Government may still prove that the warrantless search would fall within one of the "carefully defined classes of cases" that do not violate the Fourth Amendment.  *See Groh*, 540 U.S. at 560, 124 S. Ct. at 1291.

[10]  Pratt did not allege any bad faith on the part of the officers effectuating the search nor on the part of the Government.  Therefore, we limit our holding to situations not involving bad faith.

12

**2. Review of the district court's findings**

We will accept the district court's factual determinations unless they are clearly erroneous. The district court made two factual findings that Pratt challenges: (1) a search warrant existed and (2) the search warrant's description of the items to be searched and seized were exactly the same as the supporting affidavit.

The Government presented ample evidence of the warrant's existence and exact contents with testimony from the officer who drafted the warrant, the magistrate who issued the warrant, and the affidavit that supported the warrant. The issuing judge repeatedly and unwaveringly testified that he always makes sure the warrant matches the affidavit in its description of the place to be searched and the items to be seized. He further testified that he was sure that he issued a warrant in Pratt's case based on his signature and his consistent practice. This testimony was neither challenged nor contradicted by any evidence submitted by Pratt. The district court's factual findings are, therefore, not clearly erroneous.

Finally, we turn to whether the district court erred in finding that the missing search warrant satisfied the Fourth Amendment's particularity requirement. We need not re-analyze the warrant's descriptive language since Pratt concedes that the warrant's descriptive language would be particular if it mirrored the affidavit's

descriptive language.[11]  That said, we agree with the district court and find that the warrant's descriptive language particularly describes the place to be searched and the person or things to be seized.  Accordingly, we affirm the district court's denial of Pratt's motion to suppress.

## B.    Sentencing

Statutory *Booker* error occurs when the district court sentences a defendant under a mandatory guidelines scheme.  *Mathenia*, 409 F.3d at 1291.  Pratt asserts that the district court committed *Booker* statutory error because of its mandatory use of the Guidelines to sentence him.  The Government concedes this error, but argues that the error was harmless nonetheless.

In statutory error cases, the error is harmless "if, viewing the proceedings in their entirety, a court determines that the error did not affect the sentence, or had but very slight effect." *Id.* at 1292 (internal marks and quotations omitted).  That is, "[i]f one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." *Id.* (internal marks and quotations omitted).  Where the district court states that the sentence would be the same under advisory guidelines, any Booker error is harmless. *Id.*

---

[11]  The affidavit's descriptive language appears in n.1 of this opinion.

Here, the district judge explicitly stated, "Finally, I should note that, if the Supreme Court holds in *Booker* that the Guidelines cannot constitutionally be made binding, then it is my view that they nonetheless can and should be considered by a district court judge in deciding where to place a sentence within the entire statutory range. I would do that here, and under the circumstances would impose this same sentence."[12]

Pratt argues, notwithstanding the judge's statements, that the judge did not take into account all of the factors that he could have because the Guidelines were mandatory. This argument is unpersuasive. Because the judge would impose the same sentence under an advisory guidelines system, we can say "with fair assurance . . . that the [sentence] was not substantially swayed by the error." *Id.* at 1292. Accordingly, the *Booker* statutory error was harmless, and we affirm Pratt's sentence.

---

[12] Before making this statement, the district court also stated,
Let me tell you the sentence I'm going to impose and why, and then I'll formally impose the sentence. The sentence I'm going to impose is 188 months. That's the low end of the range. The government is correct that Mr. Pratt has a very bad record of prior drug convictions. That appropriately is taken into account in sentencing, and appropriately calls for a substantial sentence. The guidelines take into account that bad record. The bad record is what makes him a career offender. The guidelines range for this offense, without the career offender provision, would be I believe 110 to 137 months. The low end of the range with a career offender provision is 188 months. The criminal record does call for a substantial sentence. A hundred and eighty-eight months is a substantial sentence.

**IV. Conclusion**

We AFFIRM the district court's denial of Pratt's motion to suppress and we AFFIRM Pratt's 188-month sentence.

**AFFIRMED.**